REAL ESTATE TRUST COMPANY OF PHILADEL-
PHIA ET AL. *vs.* UNION TRUST COMPANY, TRUSTEE,
ET AL.

*Liability of Trustee for Expenses of Sale Afterwards Vacated—Mort-
gage to Secure Bonds—Payment of Interest—Delay in Presenting
Coupons for Payment—Distribution Among Creditors—Authority
of Attorney—Trust Company Depositing Money with Itself as
Banker—Liability for Interest—Expense of Stating Auditor's Ac-
count—Waiver of Notice of Taking of Testimony.*

Upon the occurrence of a default in a mortgage executed to a trust com-
pany to secure an issue of bonds, a sale was decreed upon a bill for
foreclosure.   The company, as trustee under the decree, was advised
by reputable counsel that it was not necessary to file a bond before
making the sale, because the company's charter exempted it from the

operation of Code, Art. 16, sec. 205A, which requires trustees to give bond before making sale. It was subsequently adjudicated that this advice was erroneous; that a bond was necessary, and the sale made by the trust company was accordingly vacated. Upon a subsequent distribution of funds covered by the mortgage, *held*, that the trust company is entitled to be allowed the expenses of the sale so vacated since its failure to give bond was not the result of negligence, and the company, as trustee, had acted with reasonable prudence.

A trustee will not be charged with an alleged discount which might have been obtained upon a bill for taxes if the same had been paid earlier, when the record fails to disclose the time when the discount could have been claimed or the amount thereof.

Upon the distribution of the proceeds arising from the sale of part of mortgaged land, the trustee in possession should be allowed to retain a reasonable amount to meet contingent expenses, pending the final settlement of the trust estate, when the property mortgaged consists of unimproved land upon which taxes will accrue.

A mortgage deed of trust to secure the payment of bonds bearing interest provided that in the event of a default the trustee should apply the funds equally and ratably, without distinction, between interest and principal, to the payment of the principal of the bonds and the accrued and unpaid interest. The interest upon certain of the bonds was paid when due, but was not claimed upon certain other bonds, because the holder thereof wished to avoid a foreclosure sale, but there was no evidence that this holder expressly waived payment of the interest. Afterwards a default occurred and the trustee took possession of the property. Upon a distribution of a fund among creditors of the mortgagor, *held*, that this unpaid interest is not entitled to priority of payment but is simply a debt due and entitled to a dividend equally with the other interest and principal secured by the mortgage.

The holder of interest coupons who does not present the same for payment when due is entitled to *pro rata* payment thereof, with the principal of the bonds, upon a subsequent foreclosure of the mortgage made to secure the whole indebtedness.

A lawyer employed to act as counsel for a creditor is not authorized, merely by virtue of such employment, to surrender any part of the indebtedness.

Interest coupons are not entitled to any priority of payment over the principal, and the same rule applies to interest on certificates of indebtedness.

When certain creditors direct an audit to be stated in a certain way, while the auditor states his own account in a different way, it is proper that the cost of stating the former audit should be charged against the parties directing it to be made.

When a trust company, which is authorized to carry on a banking busi-
ness, receives a sum of money as trustee under a mortgage and de-
posits it with itself as banker, but makes no use of the fund, the com-
pany is not to be charged with the full legal rate of interest on such
sum.

When counsel are present at the taking of testimony before an auditor,
under an order of Court referring the case to the auditor for the taking
of testimony, the fact that no notice was given to counsel that the tes-
timony would be taken is not a ground for excepting to the evidence,
because the presence of counsel dispensed with the notice.

Three appeals from the Circuit Court of Baltimore City
(DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Fielder C. Slingluff, T. Wallis Blakistone* and *R. Lee Sling-
luff* (with whom was *Ruxton M. Ridgely* on the brief), for the
Union Trust Co. *et al.*

*W. Calvin Chesnut* (with whom were *Joseph DeF. Junkin*
and *Gans & Haman* on the brief), for the Real Estate Trust
Co.

*D. K. Este Fisher* and *W. H. Surratt* (with whom was *Wil-
ton Snowden* on the brief), for James L. McLane *et al.*, Com-
mittee.

McSHERRY, C. J., delivered the opinion of the Court.

There are three appeals in this record which comes before
us from the Circuit Court of Baltimore City. The facts which
it is necessary at the threshold to state as a basis for the con-
sideration of the questions presented, are briefly as follows:
The Arling-Brooke Real Estate Company was duly incorpor-
ated under the laws of the State of New York, and in 1901
acquired title to a tract of land in the western portion of Bal-
timore City. In June of the same year it executed a mort-
gage to the Union Trust Company of Maryland, trustee, to
secure an issue of six hundred thousand dollars of bonds,
each bond being of the denomination of one thousand dollars.

The bonds were to bear interest which was to be payable semi-annually on the first days of June and December in each year. The bonds were not in fact issued, but in their stead certificates convertible into bonds were delivered. The interest due on December 1st, 1901, was paid on a portion of the certificates. In June, 1902, the mortgagor corporation defaulted on the interest due on the first day of that month, and the Union Trust Company, trustee, filed its bill of complaint in the Circuit Court of Baltimore City praying for a foreclosure of the mortgage and a sale of the mortgaged property. The trustee, the Union Trust Company, sold the property to John V. Ward, who represented the bondholders and purchased for them, but the sale was excepted to, and upon a hearing of the exceptions it was set aside. An appeal was taken to this Court, where the action of the lower Court in this behalf was affirmed. *Union Trust Co.* v. *Ward*, 100 Md. 98. During the pendency of the contestation and before a second sale was had, the Western Maryland Railroad Company inaugurated condemnation proceedings against the Arling-Brooke Real Estate Company to acquire a portion of the latter's property for the road bed of the railway, and the sum of $62,500 after some negotiation, was finally awarded as damages for the land so taken. This sum was paid into Court on December 14th, 1903, and on December 23rd, upon the petition of the Union Trust Company was turned over to it as trustee. The latter being a banking company deposited in its own name as trustee under the mortgage, with itself, as banker, the above mentioned sum.

On January 18th, 1904, it caused an expense account to be stated, and on June 29th, 1904, an audit was made out distributing the net proceeds of the fund. To that audit sundry exceptions were filed and the action of the Court upon those exceptions and its rulings with respect to the admissibility of certain evidence taken before the auditor are the subjects with which we have to deal on these appeals. Of those exceptions some were filed by the Real Estate Trust Company of Philadelphia, others by the Union Trust Company, trustee; and

the remainder by James L. McLane and others, constituting a committee of the certificate holders.   As some of the exceptants duplicated the objections filed by others, it will be more convenient in considering them, to deal with them without reference to the particular party by whom they were interposed.   They will be taken up in the order in which the questioned items appear in the auditor's account.

*First.* Was the Circuit Court right in overruling the exceptions to the allowance to the Union Trust Company, as trustee, of the sum of $2,548.50 as expenses of the first sale which was later set aside, as heretofore stated?   The sole ground upon which the effort to hold the trustee liable for those expenses, is that the sale in respect of which they were incurred was set aside because of the failure of the trustee to give a bond as required by the Act of 1900, ch. 114, sec. 205A, Art. 16 of the Code.   If the omission to give a bond was due to the negligence or carelessness of the trustee, then clearly the expenses alluded to ought not to be charged against the trust fund, but should be paid by the delinquent trustee.   But if, on the contrary, the trustee acted with appropriate prudence it will not be held liable for an error into which it fell in consequence of following the advice given it by reputable counsel, even though it subsequently turned out that the advice so given and acted on was wrong.   It was said by the Supreme Court of Pennsylvania in *Bradley's Appeal*, 89 Pa. St. 514, "Acting in good faith and in the strict line of their duty, they (the trustees) sought the advice of respectable and experienced counsel.   It would be harsh as well as unjust to hold them responsible for his error of judgment, and the law does not require us to do so."   It comes down then to a mere question of fact as to whether the items of expenses embraced in the exception now being considered ought to be paid out of the trust fund or by the trustee.

It is abundantly and clearly proved that the President of the Union Trust Company consulted Mr. T. Wallis Blakistone, Messrs. Slingluff and Slingluff and Mr. Ruxton M. Ridgely, all reputable and experienced members of the bar, and ob-

tained their opinion to the effect that before making the sale under the mortgage from the Arling-Brooke Real Estate Company, it was not necessary for the trustee—the Union Trust Company—to file a bond under the Act of 1900. Upon that opinion the company acted; and that opinion was doubtless based upon the twelfth section of the Company's charter—the Act of 1898, ch. 456. The section just indicated provides "That when any Court shall appoint the said company as receiver, trustee, administrator, executor, assignee, guardian, or committee * * * the capital stock as paid in shall be taken and considered as the security required by law for the faithful performance of their duties." When default in the payment of interest by the Arling-Brooke Company occurred the trustee, the Union Trust Company, filed a bill in the Circuit Court of Baltimore City asking the appointment of a receiver to hold the real estate covered by the mortgage until a sale could be made under the direction of the Court. The Court assumed jurisdiction of the trust, appointed receivers, and in due course passed an order authorizing the Union Trust Company, as trustee under the mortgage, to sell the mortgaged property in accordance with the terms of the mortgage and to report the sale to the Court for its ratification. It was under these conditions that the counsel who were consulted by the Union Trust Company gave the opinion that no bond was required. The Act of 1900 embodied in *sec. 205A, Art. 16 of the Code;* had not then been interpreted by the Courts and it was not until the case of *Union Trust Co.* v. *Ward, supra,* arose, that the statute was judicially held to be applicable to the Union Trust Company. In view of the fact that by an order of the Circuit Court the Union Trust Company was, under the bill filed by it, authorized, as trustee, to sell the mortgaged property; and inasmuch as by the twelfth section of its charter the only security it was obliged to give when appointed trustee was its paid in capital stock, it was not negligence, or an indication of bad faith on the part of the trustee, to act upon the opinion of its advisers to the effect that in such circumstances no bond was required. When the question was finally deter-

mined in this Court and it was decided that the provisions of the charter did not include a sale under a mortgage notwithstanding the prior order of authorization, the opinion upon which the trust company acted in making the sale without a bond was shown to be erroneous. Surely under such circumstances to hold the trustee answerable for the expenses to which it was put in making the sale that was subsequently vacated, would be harsh as well as unjust. We think the Circuit Court was right in overruling that exception.

The Maryland cases relied on to support the opposite conclusion are distinguishable from the one at bar. Thus in *Owings* v. *Rhodes*, 65 Md. 408, where the observations of LORD REDESDALE in *Doyle* v. *Blake*, 2 Sch. & Lef. 243, were quoted with approval, it appeared that a trustee paid to a *cestui que trust* money which had been audited to the latter's creditors; and it was held that such a mistake, no matter though made honestly, could not relieve the trustee from the obligation to apply the fund according to the direction contained in the ratified audit. So, in *Green, trustee,* v. *Putney and Riddle*, 1 Md. Ch. Dec. 262, whilst it was broadly stated that a trustee who disburses money without competent authority is chargeable, as if the money were in hand, the proposition was qualified and restricted in its application to trustees appointed by decrees to sell property. "The principle," said the Chancellor, "cannot surely be applied with the same vigor to a trustee acting under a deed giving express authority to pay debts;" and he refused to require the trustee to account for some five thousand dollars paid out in counsel fees. In *Murray et al.* v. *Finour*, 2 Md. Ch. Dec. 418, it was held where a testator gave certain stocks by his will to a trustee for the use and benefit of his daughter and her children, without delegating to any one a power to alter or change the investment, that the trustee, who, having no express authority from some competent tribunal, sold the shares and invested the proceeds in other securities would be required to replace the original stock and to bear the loss occasioned by the improper alteration of the investment. None of these cases touch adversely the conclu-

sion reached on the question raised by the exception now being considered. It may be added that the mortgage in explicit terms provides for deducting from the proceeds of sale "proper allowances for all the expenses thereof," and the allowance of the items objected to would seem to be strictly within the ruling in *Green, trustee,* v. *Putney and Riddle, supra.*

*Second.* Ought the trustee to be charged with $43.14, being the amount, it is alleged, of the discount which would have been allowed the trustee if it had paid the city taxes for the year 1904 earlier than it did pay them?

It appears by an agreement in the record that the taxes in question were paid June 29th, 1904; but we have failed to find any statement as to the time within which a discount could have been claimed, or as to the *per centum* of the discount allowed if claimed. In the absence of these material matters it cannot be said that the trustee was derelict in not paying the taxes at an earlier date. The lower Court was, consequently, right in overruling the exception.

*Third.* Should the trustee be allowed to retain the sum of two thousand dollars to meet contingent expenses pending the final settlement of the trust estate? The retention of the sum named is not a final disposition of the fund ; and it was largely a matter resting in the sound discretion of the Court under whose supervision the trust is being administered, as to whether it would be judicious or advisable for the trustee to hold the sum named to meet contingencies. Ultimately the Court must pass upon the disposition made of the money and no one can be injured by its being temporarily withheld from distribution. The property covered by the mortgage consists of unimproved land. Heretofore the trustee has made large advances to pay taxes and other expenses. It is under no obligation to repeat this ; and as taxes will accrue if they have not already been levied, it is both wise and prudent to leave in the hands of the trustee a fund adequate to meet such demand when it matures, rather than to permit the taxes to run until overdue and to become augmented by the addition of interest. We see no reason for disturbing the action of the Circuit Court in overruling this exception.

*Fourth.* The auditor's account allowed a dividend on the sum of $9,050, being the interest accrued between June 1st, and December 1st, 1901, on certificates Nos. 1 to 360, both inclusive, and on certificates 476 and 492. There were two exceptions to this dividend. One objected to any allowance being made because the coupons had "been already paid, satisfied or disposed of." The other insisted that the allowance of a mere dividend was erroneous, because the interest should have been allowed in full as a preferred claim. The Circuit Court sustained the exception first mentioned and refused to allow any portion of the fund to be applied to the interest which had accrued on the above named certificates, between the dates designated. Upon the certificates held by certain parties in Baltimore the December, 1901, interest was paid. In dealing with this branch of the case the auditor concisely states the situation in the words we are about to quote, and we quote them because they will simplify the discussion of these exceptions. After noting that the interest on some of the certificates had been paid, as above indicated, the auditor in alluding to the certificates upon which no interest was paid, continues "the claim is made that such unpaid interest (of coupons) should be allowed as a preferred claim, so as to equalize the payments to all the certificate holders. There is no evidence that the holders of these certificates ever presented their claim for interest or that it was refused to them. The claims as presented to the auditor, appear to be the case of a party neglecting to present his coupons for payment before the company became insolvent and the foreclosure proceedings were begun. The auditor is of opinion that under the circumstances the claim is not a preferred one but is simply a debt due, of the same dignity and priority as the principal of the mortgage debt." The question thus raised is presented under three aspects, viz.: Is the unpaid interest entitled to be paid at all, until after the entire interest on and the principal of all the certificates have been fully satisfied? If the interest is entitled to be paid, must it be paid in full as a preferred claim ; or, is it entitled only to a dividend along with other

like claims, as the auditor has determined? If the view taken by the auditor is right the other contentions must be wrong. It will, therefore, shorten the discussion to examine whether that view is sound.

Naturally, the first source from which any light might be expected on this subject is the mortgage itself, because that, together with the certificate, contains the terms of the contract between the Arling-Brooke Company and its mortgage creditors. The eighth clause of the mortgage after providing, in the event of a sale, for the payment of sundry expenses out of the proceeds thereof, then declares with respect to the net residue, "it shall be the duty of the trustee to apply the residue of the money arising from the said sale, together with the amount of all moneys received by it, prior to such sale, including all moneys and property in the sinking fund, equally and *ratably*, and without giving preference, priority or distinction to one bond over another, or to principal over interest, or interest over principal, to the payment of the whole amount of the unpaid principal of said bonds, which may be outstanding, and of the whole amount of the interest upon all and any of said bonds, which may at that time have accrued and be unpaid." This ought to set the matter at rest and ought to permit the claim for unpaid interest on the 362 certificates heretofore designated by numbers, to participate equally and ratably in the fund, unless there is sufficient evidence in the record to show that the interest on those certificates was either paid; or else that, as against the fund, the payment thereof was distinctly waived by the holders of the certificates or by some one for them and with their authority. As to the first alternative it is only necessary to say that there is not a shred of evidence tending to prove that the December, 1901, interest on these particular certificates was actually paid by any one; and we pass to a consideration of the remaining alternative. This will require a brief review of some facts which have not yet been alluded to.

The Arling-Brooke Real Estate Company was organized and promoted by one John C. Mosser. The company was

formed to develop certain suburban property in Baltimore. It issued certificates to the amount of six hundred thousand dollars which were to be exchanged for coupon bonds of a like amount as soon as the latter were lithographed; and it executed the mortgage previously alluded to for the purpose of securing the payment of the principal of the bonds and the interest coupons to be attached thereto. Capital stock was also issued by the company, and a considerable block of both bonds and stock was delivered to Mosser in payment for property conveyed by him to the company. In June, 1901, Mosser, borrowed on his promissory note from the Real Estate Trust Company of Philadelphia, one of the appellants on this record, the sum of two hundred and fifty thousand dollars and pledged as collateral, three hundred and sixty of the one thousand dollar certificates which he had received from the Arling-Brooke Company as explained above. The note matured in October following and was not paid, but the Real Estate Company did not convert the collateral to its own use until February, 1904. The Union Trust Company owned one hundred thousand dollars of these same certificates, and others were held by Baltimore parties. Before the interest which fell due on the first of December, 1901, accrued it was realized that there would be a default in its payment because the Arling-Brooke Company was wholly without funds. This being the situation of affairs negotiations were opened between the president of the Union Trust Company on the one hand, and Mr. Mosser and Mr. Joseph Junkin, the counsel of the Real Estate Company on the other hand, with a view of effecting an arrangement by which the interest to mature December the first on the certificates held by the Baltimore parties would be paid. That interest was paid. Out of those negotiations the contention of the Union Trust Company to the effect that the right to demand interest on the 360 certificates held by the Real Estate Company had been waived has arisen. In the testimony given by the president of the Union Trust Company on this branch of the case will be found the following statement. Referring to the interviews between himself and Mr. Junkin, Mr. Blakistone says: "The ultimate

result of the various interviews, was that if Mr. Mosser could get somebody to put up enough money to pay the interest on the Baltimore bonds that Mr. Junkin would waive—at least for the time being, if not entirely—the interest on the bonds held by him—the interest on the bonds in Philadelphia represented by him. In other words he authorized me to accept the $6,000, which was just sufficient to pay the interest to the Baltimore bondholders, provided that Mosser could secure the payment of that much to the trust company," and the reason for doing this was that if the trust company foreclosed, a large block of bonus stock held by the Philadelphia interests would be wiped out. Upon cross-examination Mr. Blakistone was asked: "Was the payment of interest waived by Mr. Junkin on account of the bonds he represented only for the time being?" And he replied: "That I could not definitely answer. I supposed that Mr. Junkin would expect at some time in some way to get a *pro rata* payment on the bonds which he held, but I carry in my mind in connection with the transaction the fact that Mr. Mosser was the borrower from this loan syndicate;" &c. The rest of the answer consists of matters of opinion.

We find no other evidence in the record tending to show a waiver by the Real Estate Trust Company of its right to claim payment of the December, 1901, interest; and we are unable to see how that which the record does contain can be said to establish the alleged waiver. But even if the testimony were more positive and explicit on the subject of the asserted waiver, the record is absolutely and entirely silent as to whether Mr. Junkin had authority as counsel to bind by such a waiver the parties he represented. He appears to have been acting for the Philadelphia interests, not as an agent, but as counsel, and there is no evidence to show that he was clothed with authority to surrender any portion of the indebtedness due to them. His employment as counsel gave him no such authority. *Lyon* v. *Hires*, 91 Md. 422, and cases there cited.

As we fail to find that a waiver of the kind set up has been proved, the December, 1901, interest is entitled to be allowed

under the terms of the mortgage ratably and equally with the other interest and principal secured by the mortgage. The question does not arise on unpaid coupons, as no coupon bonds had been issued; but the general doctrine that coupons have no equity superior to the bonds from which they have been detached (8 *Am. & Eng. Ency L.*, 2 ed. 13), applies to interest payable in virtue of the undertaking contained in the certificate. *Ketchum* v. *Duncan*, 96 U. S. 659. There was error in rejecting the *pro rata* distribution allowed by the auditor and his report in this respect should have been ratified.

*Fifth.* Was the Court right in overruling the exception to the auditor's charge of eighteen dollars for writing an auditor's account called, Account X ? No testimony was taken on this exception. The item was charged against the distribution made to the bondholders, and not against the general fund. In the record there appears a statement made by the auditor to this effect: "The auditor wishes to state that Account X was prepared at the request of the counsel for the committee of the bondholders  *  *  *  The auditor's recollection is that in said Account X he specifically stated it was not his account but one stated at the request of the counsel for the bondholders' committee." As the bondholders ordered this particular audit (which was not used) to be made, they ought to pay for it. There was no error in overruling the exception to the allowance.

*Sixth.* The auditor charged the trustee, the Union Trust Compay, two per cent interest on the trust funds, and the Circuit Court increased the rate to six per cent. Which of the two is right? The auditor made the charge of two per cent by direction of the counsel of the trustee ; and hence that charge must stand unless the higher rate of six per cent prescribed by the Circuit Court was properly substituted. Whether or not the higher rate should have been exacted will now be considered. It must be borne in mind that the Union Trust Company possesses very large and varied powers under its charter. In addition to the right to act as trustee it is clothed with authority to carry on a banking business and to

receive money on deposit.    If it could take money from others on deposit, it surely could open an account with itself' when acting as trustee and could lawfully take and hold in its capacity as banker, money in its hands in its capacity as trustee.    There was nothing irregular in its doing so.    If it had not possessed the authority to receive money on deposit, it would have been bound in the exercise of ordinary prudence, when these trust funds came into its hands, to deposit them in its name as trustee, with some banking institution.    Had it done so and had it made no use of the funds no interest would have been chargeable against it, unless it had collected interest from the depository, or had unreasonably delayed the settlement and distribution of the money.    *Garrison* v. *Hill*, 81 Md. 206.    "Against honest and faithful trustees interest is never charged beyond actual receipts.    Trustees are not liable to pay interest on money that has gained no interest, unless they have been negligent, but if they might have made the funds productive, and were grossly negligent in allowing them to lie idle, or have used them, or made interest, they are liable." *Perley on Interest*, 75.    Whilst, as said by this Court in *Gott* v. *State, use Barnard*, 44 Md. 319, "it is difficult to prescribe a fixed rule" with respect to the liability of a trustee to pay interest, the general doctrine just quoted from Perley may be regarded as sufficiently comprehensive to include nearly every instance likely to arise ; and it is certainly applicable to the case at bar.    Now, instead of placing the funds in some other bank or trust company, the trustee deposited them with itself, and an account which had been previously opened was duly credited with the entire sixty-two thousand five hundred dollars.    That account is thus entitled, "Union Trust Company of Maryland, trustee, Arling–Brooke Real Estate Company, Dr.    In account with Union Trust Company of Maryland, Cr."    The credit was not diminished a dollar except by the payment of taxes and other items which have all been allowed in the undisputed expense account.    The trustee, according to the testimony, never used a dollar of the funds and there was no time when the actual cash on hand in its bank was not

in excess and largely in excess of the trust fund. Of course the funds were not specially set apart or ear-marked, and they were not required to be. They were to the credit of the trustee and were not used by the trustee. The trustee as such made no profit out of them. The bank or banking department in which they had been placed, put them with its general funds, just as it or any other bank would have done with any other trust funds deposited with it. No other use was made of the funds than would have been made of them had they been deposited in a national bank. If, in these circumstances the Union Trust Company, trustee, is liable for the full legal rate of interest, then no trust company which acts as a trustee and at the same time transacts a banking business, can venture to keep its trust accounts in its own bank without running the risk of paying as a penalty therefor the highest legal rate of interest; though it might be required to pay no interest at all if it had placed the funds in some other bank. We see no reason for charging the six per cent interest. That part of the decree will, therefore, be reversed.

*Seventh.* Was the Court right in overruling the exceptions to testimony, filed December 20th, 1904? The grounds of exception are, first, that no order of Court was obtained for the examination of the witness; and secondly, that no notice was given to the opposite counsel. On November the fourth an order was passed referring the papers to the auditor for the taking of testimony *on the account filed June 29th, and the exceptions thereto.* The witness whose testimony is excepted to gave his evidence upon those exceptions on November 15th. The order was then in force. As to the want of notice it need only be said, the opposite counsel were present and cross-examined the witness, and under *sec. 28, Art. 35 of the Code,* that dispensed with notice. The counsel were there in attendance without notice. No injury was done by the failure to give notice. There was no error in this ruling.

It will be seen from what has been said that the first, second, third, sixth and seventh paragraphs of the decree appealed from must be affirmed; and that the fourth and fifth

paragraphs must be reversed. The cause will be remanded for a new decree conforming to this opinion. The costs to be paid out of the funds.

> *Decree affirmed in part and reversed in part and cause remanded. The costs to be paid out of the fund.*

(Decided June 22nd, 1905.)