W. C. CORBETT, GUARDIAN, *v.* JOHN D. HOSPEL-HORN, RECEIVER.

[No. 46, January Term, 1937.]

258

*Decided April 9th, 1937.*

260

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Reuben Oppenheimer*, with whom were *Howard H. Conaway* and *Emory, Beeuwkes, Skeen & Oppenheimer*, on the brief, for the appellants.

*Alexander Armstrong* and *J. Purdon Wright*, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The National Bond & Mortgage Corporation of Texas, on November 1st, 1928, as grantor, and the Pennsylvania Surety Corporation as guarantor, executed to the Century Trust Company of Baltimore, a Maryland corporation, and Henry M. Laithe, a deed under which the grantor undertook to pledge with the grantees property consisting (a) of cash, (b) United States government bonds or certificates of indebtedness, and (c) mortgages, which should be first mortgages to the extent of thirty-six per cent. of "the trust property, securing the first $1,000,000" of notes, to secure the payment of certain "6% Collateral Trust Gold Notes," and the interest to accrue thereon. The surety company joined in the deed for the purpose of guaranteeing the payment of such notes. Eventually the Century Trust Company became merged with the Baltimore Trust Company, which succeeded it as trustee under the deed, and G. Roy Mueller succeeded Laithe as the individual trustee.

The Mortgage Company became insolvent, the guarantor was dissolved, without assets or resources available from either for payment on account of the indebtedness evidenced by such notes.

The deed provided that the trust property pledged to secure the payment of the notes should conform "in all respects" to the requirement of article III of the deed, "and no other." Those requirements were that the property should consist of cash, government securities, and mortgages. As stated *supra,* the mortgages so pledged were to be first liens on the mortgaged property to the extent of thirty-six per cent. of the trust property securing the first $1,000,000 of notes, each mortgage maturing in three years or at a more distant time was to provide for amortization by equal monthly, quarterly, or semiannual payments, and the liens against the mortgaged property, including that of the mortgage, were in no case to exceed seventy-five per cent. of the value thereof as fixed by an appraisal by two appraisers selected in writing by the grantor and the guarantor, and each mortgage was to be accompanied by a surety bond executed by the mortgage company and the guarantor, guaranteeing the payment of the principal and interest of the pledged mortgage.

It also provided that "The aggregate principal amount of the Notes issued and outstanding at any time shall never bear a greater ratio or percentage of the aggregate principal amount of the Trust Property, then in the hands of the Trustees, than that which results from a determination of the same by taking so much of said Trust Property as consists of United States Bonds, United States Certificates of Indebtedness and/or Cash at one hundred per centum (100%) of the principal amount thereof, and so much of said Trust Property as consists of Mortgages as the term 'Mortgages' is in this indenture defined, at eighty-three and one-third per centum (83⅓%) of the unpaid principal amount thereof, it being the intent hereof that to the extent said Trust Property consists of Mortgages aforesaid, there shall be deposited

with the Trustees One Hundred and Twenty Dollars ($120.00) of unpaid principal amount in said Mortgages for every One Hundred Dollars ($100.00) of Notes then outstanding, which are properly apportionable to said Mortgages upon the basis of determination hereinbefore set forth."

It further provided that in the event of a default on the part of the Mortgage Company, or upon the appointment of a receiver for it, or if a petition were filed to have it declared a bankrupt, the trustee should, pending such default, bankruptcy, or receivership, collect the notes, bonds, and obligations pledged with the trustee as "trust property." Article VII of the deed provided that in the event of certain defaults the trustee should at the request of the holders of twenty-five per cent. in amount of the notes "and upon receiving satisfactory indemnity to them against all costs, expenses and liability to be by the Trustees incurred, and not otherwise, as in their discretion they deem best, or as directed in writing by the holders of at least fifty-one per centum (51%) in amount of the Notes then outstanding, declare all unmatured Notes immediately due and payable. * * *"

Article XII provides that if the corporate trustee resigns his successors may be appointed by the holders of fifty-one per cent. in amount of the notes, or in an interim by the mortgage company, and the individual trustee may be removed and his successor appointed at any time by the trustee.

The deed further provided that the mortgage company could not withdraw or substitute any collateral so long as it was in default, and that it should substitute for mortgages in default other mortgages or trust property.

On January 14th, 1931, the Pennsylvania Surety Corporation was dissolved and its business liquidated. On December 14th, 1931, the Mortgage Company addressed to the Baltimore Trust Company and Laithe, trustees, a formal written "proposal," in which they admitted that the collateral then held in the trust had become inadequate to protect the noteholders (a) because of the failure of

the surety guarantee, and (b) the depreciation of the trust property; they called attention to the fact that no more mortgages could be accepted under the deed because the guarantor could no longer give the guaranty required by its terms, and that the collateral was being diminished by the foreclosure of prior liens. They further stated in that paper that "Any cash which accumulates in the Trust produces very little income and inasmuch as there are many Noteholders who, because of the prevailing depression wish to liquidate their holdings at a reduction from their face value, it would be advantageous both to the Noteholders and to ourselves to allow this cash to be used for the purchase and retirement of available Gold Notes." In view of these conditions they offered to substitute for the terms of the deed of trust a plan of liquidating and administering the trust which in terms abrogated several of the more important of those provisions of the deed of trust, to which reference has been made and which were designed for the protection of the noteholders, under which plan the trustees would be authorized to accept without limitation as to their ratio to the trust property second mortgages with or without amortization provisions, disregard the requirement of a surety bond, surrender for cash notes required by the mortgage company, and which would cancel the power of the trustees to declare outstanding notes due and payable by acceleration, cancel the rights accruing to the trustee and noteholders through defaults, and cancel the right of the trustee to require the substitution of other mortgages for trust property mortgages in default.

On February 24th, 1932, the Mortgage Company filed against Laithe and the Baltimore Trust Company, trustees, in the Circuit Court No. 2 of Baltimore City, its bill of complaint in which it prayed that the trustees be authorized to accept that proposal. On February 24th, 1932, the court by its decree of that date "authorized and directed" the trustees to accept the proposal. The decree recites that an answer was filed, but it does not appear that testimony was taken, or that the noteholders

had then any notice of the "proposal" or its effect on the deed of trust.

On October 10th, 1933, the Mortgage Company made an additional "proposal" to the trustee, submitting plans of liquidation which contained, among others, these provisions:

"Unless and until directed to do so by the Circuit Court of Baltimore City you are not to declare the outstanding Gold Notes due and payable by acceleration as provided in Article VII of the Indenture and shall not invoke any of the remedies provided in the Indenture for operation or liquidation of the trust after the occurrence of any event of default.

"We are to continue to exercise all our rights under the Indenture as modified by our Proposal, dated December 4th, 1931, as though no default had occurred thereunder, and all of the provisions of the Proposal dated December 4th, 1931, shall remain in full force and effect."

On October 13th, 1933, it filed in the case a petition praying the court to authorize the trustees to accept that proposal, and on the same day, upon the trustees' answer, without testimony, or apparent notice to the noteholders, the court decreed accordingly. With that background, on January 10th, 1934, the Mortgage Company addressed a communication to the noteholders requesting them to execute a supplemental agreement extending the maturity of the notes. Although attention was not called to the fact, the supplemental agreement adopted and ratified the decrees of February 24th, 1932, and October 13th, 1933. The holders of notes, including the plaintiffs in the bill in this case, aggregating $79,400 of $86,500 outstanding, consented to the extension.

At some time prior to October 9th, 1934, the corporate trustee named G. Roy Mueller individual trustee in the place of Henry M. Laithe, and on that day the court "confirmed" that appointment.

As a result of its operation and management of the trust property, the Baltimore Trust Company, trustee, came from time to time into the possession of cash which

formed a part of the trust property pledged as collateral for the payment of the notes under the terms of the deed of trust. That money it deposited in its banking department, and, at the time of the bank holiday referred to *infra,* the cash so deposited amounted to $23,878.54, which at this time is impounded or restricted as the result of certain statutes and judicial orders, for the payment of claims against the Baltimore Trust Company judicially determined to be entitled to a preference or priority.

Prior to 1931, the Baltimore Trust Company was apparently a powerful and flourishing banking institution. But at least as early as the summer of that year public confidence in its stability became affected, and from then on doubt and fear in fast increasing measure took the place of the confidence which its depositors had had in its security, so that its deposits dwindled from $80,462,000 on July 1st, 1931, to $37,292,794.62 on February 24th, 1933. In the meantime the Clearing House Association of Baltimore City in September, 1931, attempted without success to stem the tide of withdrawals, and in the same month public spirited citizens attempted to establish public confidence in its stability by subscribing $7,755,400 to a guaranty fund. The withdrawals, however, continued; in meeting current demands the company disposed of a great part of its more liquid securities on a poor and falling market, until, at the time of a bank holiday proclaimed in February, 1934, it was hopelessly insolvent. It had, however, and still has, cash more than sufficient to pay all trust deposits entitled to priority which have so far been filed. The operation of the Trust Company was suspended at the close of business on February 24th, 1933, the inception of the bank holiday, and not resumed thereafter. On January 5th, 1935, at the suit of the State against it, John D. Hospelhorn, State Bank Examiner, was appointed a receiver to wind up its affairs.

On October 28th, 1936, with the leave of the Circuit Court of Baltimore City, the appellants, who are noteholders, filed in this case their "Amended Petition," in

which, after reciting in substance the facts stated above, they prayed, "on behalf of themselves and of all others similarly situated, that they or the said trust, or the said Trustees, for the benefit of your Petitioners and of all others similarly situated, be given preference and priority for the full amount of the restricted or impounded cash," to wit, the sum of $23,878.54. The relief was denied, the demurrer sustained, the petition dismissed and from that order this appeal was taken.

The appellants suggest as a basis for the relief prayed three propositons: (1) That the Baltimore Trust Company is a judicial trustee, appointed by the Circuit Court of Baltimore City, and therefore, under Code, art. 11, sec. 48, the claim of the noteholders is entitled to a priority in the distribution of the assets of the insolvent estate of the trustee; (2) that apart from that statute the claim is entitled to priority under Acts of 1933, ch. 546, sec. 1, which amended Code, art. 11, sec. 48; and (3) that apart from any statute it is entitled to a like priority because, they say, the restricted fund of $23,878.54 is their property, which they have traced into the possession of the trustee and are entitled to recapture.

Considered in that order, the first question presented by the appeal is whether the Baltimore Trust Company was such a trustee as was contemplated by Code, art. 11, sec. 48, as it stood prior to Acts 1933, ch. 546, sec. 1.

The contention of the appellants appears to be that the Circuit Court of Baltimore City assumed and exercised jurisdiction over the trust created by the deed from the mortgage company to the Century Trust Company, and that, since it assumed and exercised such jurisdiction, it "appointed" the trustee, and that, therefore, since the trustee held the trust property as a trustee "appointed" by the court, the noteholders are entitled to a preference under Code, art. 11, sec. 48, which provides that, upon the dissolution or insolvency of a trust company which is acting as a fiduciary, "all debts or liabilities due or owing by said corporation in any of said fiduciary capacities, shall be preferred in the distribution of the assets

of such company to all debts or liabilities of any nature whatsoever, including salaries and wages of employees and other preferred debts or liabilities."

It was decided in *Frederick County v. Page,* 163 Md. 619, 635, 164 A. 182, and *Frederick Iron & Steel Co. v. Page,* 165 Md. 212, 166 A. 738, that the provision just quoted referred only to judicially appointed trustees, and not to conventional trustees. The question therefore is, Was the trustee appointed by the court? Appellants contend that he was, because the court assumed jurisdiction of the trust by advising and directing the trustee in the performance of its functions, and affirmed the appointment of a successor to the individual trustee. Undoubtedly the court did assume jurisdiction of the trust, for it could not have given such advice and directions without doing so. But its jurisdiction was special and limited to the approval of particular acts; it was not asked to assume general jurisdiction of the trust nor did it do so. What happened was that the Mortgage Company and the trustee attempted to give an appearance of legality to modifications in the deed of trust, which they were not authorized to make, by securing judicial approval of them. Since the question is not involved in this appeal, we express no opinion as to the power of a court of equity to authorize changes in a validly executed deed so extensive as to substantially change its character without the assent of the beneficiaries thereunder. But, regardless of the propriety of its acts, certainly it could not approve such changes without assuming jurisdiction of the trust, and to the extent of that approval it assumed jurisdiction of the trust. Its approval of the appointment of Mueller as the successor to Laithe as individual trustee was wholly superfluous and nugatory. Under the terms of the deed the corporate trustee alone was empowered to appoint a successor to Laithe, no other person was given the right to veto its appointment, it made the appointment, and no other act or approval was necessary to make it effective. It is true that it was required to notify the guarantor, a non-existent corporation, but, since it was non-

existent and without further interest in the suit, that requirement was automatically canceled.

The proposition that such judicial acts amounted to an "appointment" of a trustee which had been appointed by deed years before, and who appeared in court because it was so appointed, is wholly inconsistent with any accepted meaning of the word "appoint," which ordinarily means to designate some person to occupy an office or perform some function. The mere recognition of the authority of one so appointed to perform functions incident to the office cannot be accepted as an appointment to it. In this case the court was not asked to appoint a trustee, but to advise and direct one who had already been appointed before the jurisdiction of the court was invoked. The creator of the trust had appointed the trustee in the deed, its right to make that appointment may not be denied (65 *C. J.* 575), there was no vacancy in the office (*Id.* 590; *In re Elton's Estate*, 252 Pa. 491, 97 A. 677, *Monk v. Everett*, 277 Mass. 65, 177 N. E. 797), nor any circumstances justifying the reappointment of a trustee already appointed, qualified, and acting as such. To hold that under such circumstances the acts of the court in advising and directing the trustee in the performance of its duties amounted to an appointment would be repugnant both to common sense and the plain meaning of a plain word. It follows, therefore, that the appellants are not entitled to a preference under the provisions of Code, art. 11, sec. 48, because the Baltimore Trust Company is a conventional trustee appointed by deed to administer the trust under consideration, and not a trustee appointed by the court.

(2) The Acts of 1933, ch. 546, sec. 1, changed in this important particular the Acts of 1910, ch. 219, sec. 47 (p. 22), codified in the Code of 1924 as article 11, section 48. The older act excused trust companies from giving bond in respect to any trust they might be appointed by a court to administer; the present act requires such a bond if requested by a person in interest, or ordered by the court.

The case has been argued in this court on the theory that that amendment of the Act of 1910 gave the beneficiaries of conventional trusts priorities in the distribution of the property of an insolvent corporate trustee charged with the administration of the trust, which were not allowed by the Act of 1910 as construed by this court in *Frederick County v. Page*, 163 Md. 619, 164 A. 182, 190, and *Frederick Iron & Steel Co. v. Page*, 165 Md. 212, 166 A. 738, 741. But it is not apparent that the Act of 1933 had any such effect. Apart from that indicated above, the only changes made by the Act of 1933 in the Act of 1910 was to substitute, for the words "shall be appointed" occurring in the second clause of article 11, section 48, the words "and whether appointed by an order of court or otherwise," and to substitute for the term "such company" occurring in the third clause of said section the words "trust company." In construing the third clause of that section, which deals with preferences to beneficiaries as to debts or liabilities owing by insolvent corporate trustees to them in a fiduciary capacity, it was held in *Frederick County v. Page, supra,* and *Frederick Iron & Steel Co. v. Page, supra,* that the operation of that part of the statute was limited to cases in which the corporation had been appointed a fiduciary by the order of some court. Except for the slight and unimportant changes in phraseology noted in the second and third clauses, the only change wrought by the amendment of the Act of 1910 was the modification of the absolute exemption of corporate trustees from the necessity of giving a bond in respect to any trust to which they might be appointed, given by the Act of 1910, by requiring such a bond, where requested by a party in interest, or ordered by the court. The reasoning of the court in those cases, in holding that the preferential provision of the statute related only to corporate trustees appointed by some court, applies to the amended statute with the same force as to the original. In *Frederick County v. Page, supra,* it is said: "The words 'said fiduciary capacities,' used in the last clause, can only refer to the fidu-

ciary capacities specifically, named in the first and second clauses, for they or like fiduciary capacities would be the only capacities in which a fiduciary would be required to give bond, and they would be the only cases in which beneficiaries injured by the wrongful acts of the fiduciary would be affected by the exemption of trust companies from the necessity of giving bond." There the words "said fiduciary capacities" were held to refer only to the fiduciary capacities "specifically" named in the first and second clauses of the Act of 1910, which did not include conventional trustees. The reasons assigned for that conclusion were two, one, that such or like fiduciary capacities were the only capacities in which a fiduciary could be required apart from the agreement of the parties to give bond, the other, that they would be the only cases in which the beneficiaries affected by wrongful acts of the trustee would be injured by the exemption. The basis of the first reason is unchanged, the basis of the second is changed only to this extent, that under the Act of 1910 a corporate trustee could not be required by a court to give a bond under any circumstances. Under the Act of 1933, it may be required to give a bond, if, but only if, requested by a person in interest or ordered by the court, and that reason for construing the words "said fiduciary capacities" as applying only to judicially appointed trustees is still applicable, although with lessened force, to the construction of the same words in the Act of 1933, for under it the corporate trustee is still excused from giving a bond unless requested or ordered to do so.

The reasoning of the court in the opinion of Judge Sloan in *Frederick Iron & Steel Co. v. Page, supra,* confirming that construction of the phrase "said fiduciary capacities," applies with undiminished force to the construction of the same words in the Act of 1933. There it was said: "If it had been intended to give to beneficiaries of any trust, voluntary or court appointed, the protection of the statute, and give them a lien upon all of the assets of a banking trust company, there would have been no necessity to name the capacities to which

the exemption, and consequent protection, would apply; a single sentence would have accomplished the legislative purpose. * * * If there is any doubt about the limitation to be put on the application of the statute, it seems to us to be removed and set at rest by its fourth and last sentence. In construing a statute 'It is a well recognized canon of interpretation, that if any part of a statute be intricate, obscure or doubtful, the proper way to discover the intent, is to consider the other parts of the act; for the words and meaning of one part of a statute frequently lead to the sense of another, and in the construction of part of a statute, every other part ought to be taken into consideration. *Dwarris on Statutes,* 697.' *Magruder v. Carroll,* 4 Md. 335, 348. What is the meaning of the last sentence in relation to the preceding provisions of the statute? It says 'The court having jurisdiction may make orders respecting such trusts, and require the corporation to render all accounts which such court or officer might lawfully require if such executor, administrator, guardian, trustee, receiver, committee or depositary were a natural person.' Article 11, section 48. It requires no citation of authority to say that no court or officer can require any trustee or other fiduciary to render an account unless it has appointed him or it has otherwise acquired jurisdiction, nor can a court of its own motion assume such control or direction of the trust. The statute, in declaring that 'the court having jurisdiction may make orders respecting such trusts,' can only refer to and mean such trusts as were theretofore embraced in the preceding portions of the statute, and so confines its application to such trusts as were therein mentioned as, without the statutory exemption, would be required to give bond, and excludes from its operation and purpose those fiduciaries not 'appointed' as provided by the first sentence of the statute."

That conclusion is strengthened when the obvious and manifest purpose of the Act of 1933 is considered. The preferential privilege granted by the Act of 1910 to beneficiaries injured by the default or wrongdoing of cor-

porate trustees judicially appointed which were excused from giving bond was in the nature of compensation for the risk incident to that exemption. In the case of conventional trusts there was no reason for the privilege because the parties could protect themselves by requiring a bond. Since the Act of 1933 gives to the beneficiaries the right to demand such protection even in the case of a judicially appointed trustee if he chooses to exercise it, there is less reason for giving the beneficiaries of trusts administered by corporate trustees preferential treatment in the distribution of the insolvent estates of such trustees, but still less for extending that privilege to mere conventional trustees.

At the time the Act of 1933 was passed, the nation was passing through a tremendous economic and financial crisis, many banks had been unable to meet their obligations, and the stability of many trust companies which had been exempted by the Act of 1910 from the necessity of giving bond in respect to trusts to which they might be appointed was highly doubtful. Those conditions led to the conclusion that the policy which had dictated the exemption was unwise, and the obvious and sole purpose of the Act of 1933 was to correct that error by withdrawing the exemption. At a time of universal distress it seems extremely unlikely that the Legislature intended to enlarge the classes of depositors in any banking institutions entitled to preferential treatment in the distribution of the assets of such of them as proved to be insolvent, by including in such classes the beneficiaries of trusts in respect to which corporate trustees were appointed not by a court but by the parties creating the trust.

The second sentence of the section as it appeared in the Act of 1910 and as it appears in the Act of 1933 has no relation to the preference created by the third sentence, other than to emphasize the fact that the total or partial exemption of the corporate trustees from the necessity for giving bond in respect to trusts to which they had been appointed did not permit any distinction

between the fiducial duties of corporate and natural trustees, and that is the only sentence of the section in which there appears any reference to any other than a judicially appointed trustee. *Melville v. Page*, 165 Md. 597, 170 A. 175.

If it had been intended to prefer debts and liabilities owing by corporate trustees, whether appointed by a court or otherwise, the Legislature would in that clause of the section have omitted the words "of said," which had been held in *Frederick County v. Page, supra,* and *Frederick Iron & Steel Co. v. Page, supra,* to limit the application of that part of the section to cases where the corporate trustee had been appointed by an order of some court.

(3) Finally the appellants invoke the familiar and well-established principle that, where an insolvent corporate trustee is in possession of trust property in its fiducial capacity, and such property can be traced and identified as trust property, the beneficiaries may recapture it, not on any principle of preference or priority, but because it is their property.

The vital and controlling inquiry therefore is, Did the trust company in this case hold the trust property in a fiducial capacity, or as a debtor of the trustee? That question was considered in *Ghingher v. O'Connell,* 165 Md. 267, 272, 167 A. 184, 186, where Judge Parke, speaking for this court, said: "The preference in the distribution conferred by section 48 of article 11 of the Code under the conditions there prescribed is for all debts or liabilities due or owing by such trust company in its fiduciary capacity. Since the decision in the case of *Real Estate Trust Co. v. Union Trust Co.,* 102 Md. 41, 61 A. 228, a corporate trustee engaged in a banking business may, under proper conditions, deposit with its banking house or department funds of the trust estate, and thereby create a new relation of debtor and creditor. *Hardy v. Chesapeake Bank,* 51 Md. 562. When, therefore, the corporate trustee made the small deposits with itself as a banking house, the relation of debtor and creditor arose between the trust company as banker and debtor in its

banking capacity and as trustee and creditor in its fiduciary capacity." The basis of that very clear and precise statement of the principle is that a trust company which also operates as a bank may without a breach of trust deposit trust funds in its banking department. While it has been said that, in the absence of statutory authority, such a course would be a breach of trust *(Am. Law Inst., Restatement of Law of Trusts,* par. 170, comment M, p. 438), since the trustee would be dealing as an individual with itself as trustee, since *Real Estate Trust Co. v. Union Trust Co.,* 102 Md. 41, 61 A. 228, it has been the settled law of this state that such a corporate trustee may deposit trust funds in its banking department without committing a breach of trust. Assuming, therefore, that a deposit so made would not be a breach of trust merely because the depositary and the trustee constituted a single entity, the statement of the relation between trustee depositor and the trust company depositary as that of debtor and creditor (in *Ghingher v. O'Connell, supra)* is consistent with the following statement in *Am. Law Inst., Restatement of Law of Trusts,* par. 87, j, p. 251: "Thus, if a trust company holds a sum of money in trust to invest the money, and in accordance with the terms of the trust it deposits the money in its banking department until it can be invested (see par. 170, comment m), the trust company, although it holds no property in trust, is subject to the fiduciary duty of a trustee. If, however, it fails while the money is still on deposit, the beneficiary is not entitled to priority over general creditors of the trust company (see par. 202)."

If the deposit involves a breach of trust on the part of the depositor trustee, the depositary, with notice thereof, may be held to have received it as a constructive trustee, and the beneficiaries under the trust, if they can trace it and identify it in the hands of such depositary, may recapture it, not because they are entitled to a priority in distribution, but because it is their property, and never was the property of the depositary. *Frederick County v. Page, supra.* Where, however, the deposit in-

volves no breach of trust, the relation between the deposi-
tor and the depositary is essentially that of debtor and
creditor.          ,

As stated in *Am. Law Inst., Restatement of Trusts,*
par. 202, p. 534:

"(1) Where the trustee by the wrongful disposition of
trust property acquires other property, the beneficiary
is entitled at his option either to enforce a constructive
trust of the property so acquired or to enforce an equita-
ble lien upon it to secure his claim against the trustee
for damages for breach of trust, as long as the product
of the trust property is held by the trustee and can be
traced.

"(2) Except as stated in subsection (1), the claim of
the beneficiary against the trustee for breach of trust is
that of the general creditor."

The appellants, however, contend that, even if the rela-
tion between the trustee as depositor and the trustee as
depositary was, when the deposits were made, that of
debtor and creditor, the conduct of the trustee in per-
mitting the deposit to remain in what to its knowledge
was a failing and unsafe depositary amounted to a breach
of trust, and that, since the depositary had knowledge of
the breach, it became a trustee *ex maleficio.* But ordi-
narily the doctrine of constructive trusts applies to the
inception of the transaction in respect to which it is
asserted, and not to the effect of subsequent events upon
it *(Pomeroy Eq. Jur.* pars. 1044, 1060; *Jasinski v. Stan-
kowski,* 145 Md. 58, 62 et seq., 125 A. 684; *Springer v.
Springer,* 144 Md. 465, 478, 125 A. 162), except in so
far as such events may reflect upon the intention or pur-
pose of the person sought to be charged, at the time the
transaction was consummated. *Id.* There are of course
statements that where the wrongful holding of property
interests, under circumstances justifying the conclusion
that in equity and good conscience the interest should
be restored to another, begins, the wrong party may have
a trust in his favor impressed upon it *(Bogart on Trusts
and Trustees,* par. 472; 26 *R. C. L.* 1232), but no case

has been cited to support the principle that one who has come rightfully into the possession of property may, without fault of his own, but merely by the wrongdoing of the depositor, be converted from a rightful holder to a trustee *ex maleficio.* In this case, when the money was deposited, the transaction between the depositor and the depositary was at an end. Thereafter the money deposited became a part of the general funds of the depositary, subject to the order of the depositor, and the relation of debtor and creditor established between them, and title to the money deposited was in the depositary. Assuming that the depositary became insolvent, or that insolvency appeared imminent, it was under no duty either in law or good morals to deplete its assets by returning of its own motion funds in which all depositors had an equal interest. *Gray v. Elliott,* 36 Wyo. 361, 255 P. 593; *Thompson v. Orchard State Bank,* 76 Colo. 20, 227 P. 827; *McDonald v. Fulton,* 125 Ohio St. 507, 182 N. E. 504; *Leach v. Farmers' Sav. Bank,* 205 Iowa, 114, 213, N. W. 414, 217 N. W. 437. The duty of safeguarding the trust fund as such rested on the trustee depositor, not on the bank depositary, which was subject only to the duty of protecting all of its depositors equally. The power of leaving the deposit as it had originally been made, or withdrawing it, was in the trustee depositor, for it could have been withdrawn only upon its order, and not upon the order of the depositary. The difficulty and confusion incident to the allocation of the duties created by the deed of trust between the depositor and the depositary is inherent in the highly artificial and fictitious separation of a single corporate entity into distinct and diverse personalities, each charged with different powers and obligations, some of which might conceivably be conflicting. That situation, however, is inseparable from the statute, and the courts have done no more than apply settled legal principles to conditions which the statutes authorizing corporate trustees to deal with themselves as individuals created. *Real Estate Trust Co. v. Union Trust Co., supra.* Nevertheless, in view of the statute and the

decision, that may be done, and the same corporation may be, and is, at the same time a trustee and creditor in its trust capacity and a debtor and bank in its banking capacity, and in each capacity it has obligations and powers peculiar to the business transacted severally by each, and in one capacity may have interests in conflict with its interests in another capacity. In dealing, therefore, with transactions between the corporation acting in one capacity with the corporation acting in a different capacity, they must be regarded as distinct and independent entities, except that each must be charged with notice of the other's acts.

The question here is not, as in *Zimmerman v. Coblentz,* 170 Md. 468, 185 A. 342, whether the trustee was negligent, or whether it permitted the fund to remain in a failing institution to bolster its credit, but whether such negligence or wrongdoing converted the depositary from an ordinary debtor to a trustee. If the trustee depositor and the banking depositary are to be treated as though they were separate and independent, as they must be under *Real Estate Trust Co. v. Union Trust Co., supra,* and *Ghingher v. O'Connell, supra,* the relations between the two could not be so changed by the negligent or wrongful conduct of the trustee, because, once the relation of debtor and creditor had been established, the rights of other depositors intervened, and the relationship no longer concerned only the depositor and the depositary, but all other depositors of the bank, and could not be changed without loss to them. 53 *A. L. R.* 564. And there is no apparent reason why, in the distribution of the assets of an insolvent bank, the beneficiaries of a trust should be favored at the expense of other depositors, when both are alike general depositors, merely because the trustee depositor failed to withdraw his deposit before the bank failed.

To entitle the appellants to trace, identify, and recapture the fund which they claimed, it is essential that they first show that the bank depositary holds it in trust for them. *Leach v. Farmers' Savings Bank,* 205 Iowa, 114,

213 N. W. 414, 217 N. W. 437, 56 A. L. R. 806. In a preface to the annotation in the report last cited it is said: "In dealing with preferences asserted against an insolvent estate because of the character of a fund held by it, or the circumstances under which a fund was acquired, two points arise, which, although easily distinguishable, are frequently blended together by the courts, in considering the question: First, it is necessary to establish the existence of a trust relation such as will form the basis for asserting a claim to priority; second, it is necessary, when the existence of the trust relation is established, to identify or trace the trust fund into the assets of the insolvent." An essential element of that proposition is that the title to the trust property has not passed to the depositary (*Hornick, More & Porterfield v. Farmers' & M. Bank*, 56 S. D. 18, 227 N. W. 375; *Perry on Trusts*, par. 828 b. p. 1420; *Gray v. Elliott, supra*), and, as stated in *Santee Timber Corporation v. Elliott (C. C. A.)* 70 Fed. (2nd) 179, 181: "But it is well settled that the bank does not become charged with the duties of a trustee merely because it accepts on deposit funds which are subject to a trust. 3 *R. C. L.* 518; 7 *C. J.* 633; notes in 37 *A. L. R.* 120 and 53 *A. L. R.* 564. It becomes charged with such duties when it accepts funds, not as a general deposit creating a relationship of debtor and creditor, but under an agreement to handle and account for them in a fiduciary capacity, as in *Strauss v. U. S. F. & G. Co.* (C. C. A. 4th) 63 Fed. (2nd) 174, or under circumstances giving rise to a constructive trust, as in *Tucker v. Newcomb* (C. C. A.) 67 Fed. (2nd) 177." *Gray v. Elliott, supra.* The mere fact that the deposit was to the knowledge of the depositary made by the depositor in a fiduciary capacity does not make the deposit a special one (*Gray v. Elliott*, 36 Wyo. 361, 255 P. 593), nor does it prevent title passing to the depositary (*Id.*) even though it and the depositary were constituent departments of the same corporation. *Real Estate Trust Co. v. Union Trust Co., supra; Ghingher v. O'Connell, supra; Shute v. Hinman*, 34 Or. 578, 56 P. 412,

58 P. 882; 56 *A. L. R.* 806 *et seq.; Tucker v. New Hampshire Trust Co.*, 69 N. H. 187, 44 A. 927; *Bank Commrs. v. Security Trust Co.*, 70 N. H. 536, 49 A. 113, 114.

In this case the deposit was validly made, involved no breach of trust, title to the fund deposited passed from the depositor to the depositary, the trust department of the corporation became a creditor of its banking department, and the banking department a debtor of the trust department, and the fund deposited became a part of the common mass of the banking department's general deposits.

Those facts establish the relationship, between the trust company acting as a trustee and the trust company acting as a bank, as that of debtor and creditor and not that of trustee and *cestui que trust.* It follows that the appellants are general creditors, and as such entitled neither to preference or priority in the distribution of the assets of the insolvent trust company.

The relief prayed was therefore properly denied, and the order sustaining the demurrer and dismissing the petition will be affirmed.

*Order affirmed, with costs.*

URNER, J., dissents.