GREENE *v.* ANCIENT ORDER OF GLEANERS.

1. BANKS AND BANKING—PREFERENCE—BURDEN OF PROOF.

Receiver of insolvent bank has burden of proof that alleged preference of creditor occurred after one or more acts of insolvency of the bank or was made in contemplation of insolvency or for the purpose of preventing application of bank's assets as provided by law (3 Comp. Laws 1929, § 11946).

2. SAME—INSOLVENCY—DEFINITION.

A bank is insolvent whenever it is unable to pay its obligations in the ordinary or usual course of business.

3. SAME—PREFERENCE—INTENT OF OFFICER AS EVIDENCE.

Intent of bank president, who was also treasurer of assignee of mortgages given in exchange for certificates of deposit while bank was in financial straits, may be considered in determining whether or not transaction amounted to giving creditor a preference.

4. SAME—PREFERENCE—INSOLVENCY.

Evidence in suit by bank receiver to set aside assignments of mortgages *held*, to show they were given to effect a preference of assignee over other creditors after acts of insolvency had been committed (3 Comp. Laws 1929, § 11946).

Appeal from Montcalm; Hawley (Royal A.), J. Submitted April 12, 1934. (Docket No. 93, Calendar No. 37,312.) Decided June 4, 1934.

Bill by Bruce P. Greene, receiver of the Peoples State Bank of Sheridan, against Ancient Order of Gleaners, a domestic fraternal society, to set aside assignments of mortgages and for other relief. Decree for plaintiff. Defendant appeals. Affirmed.

*Brake & Davis,* for plaintiff.

*H. P. Orr,* for defendant.

WIEST, J. This is an appeal by defendant from a decree requiring it to surrender to the receiver of the Peoples State Bank of Sheridan certain mortgages, assigned to it on September 26, 1931, in violation of 3 Comp. Laws 1929, § 11946. That section is a part of the general banking act and provides:

"All transfers of notes, bonds, bills of exchange or other evidences of debt owing to any bank, or of deposits to its credit, all assignments of mortgages, or other security on real estate or judgments or decrees in its favor, or deposits of money, bills or other valuable things for its use, or for the use of its stockholders or creditors, all payments of money, either after the commission of an act of insolvency or in contemplation thereof, with a view to prevent application of its assets in the manner prescribed in this act, or with a view to the preference of one creditor over another, shall be held to be null and void."

The Ancient Order of Gleaners had $5,000 on deposit in the Peoples State Bank, evidenced by certificate of deposit, and secured by surety bond of $2,500.

September 26, 1931, the bank was in financial straits, such had been its condition for some time, and it was unable to continue the surety bond protection and, through Mr. Hudson, turned over to defendant certain mortgages amounting to $4,893.56, and a cashier's check for $256.72, in payment of the certificate of deposit with interest. December 28, 1931, the bank, still being unable to meet its obligations, closed its doors. February 15, 1932, plaintiff was appointed receiver, and May 24, 1932, this suit was brought to obtain cancellation of the assignments of the mortgages, surrender of the instruments and return of the money paid because con-

summated in contemplation of insolvency and as a preference of one creditor of the bank.

The circuit judge found that the transaction was void as a preference after insolvency, and decreed return of the instruments and money.

It is admitted that, under the mentioned statute, plaintiff had the burden of showing that the transaction was after one or more acts of insolvency of the bank or made in contemplation of insolvency, or for the purpose of preventing application of the bank's assets as provided by law, with preference to defendant over the other creditors.

Plaintiff claims that the bank was insolvent; that Mr. Hudson knew the fact; that withdrawals by some others on certificates of deposit had been refused by reason of the inability of the bank to meet such obligations, and that the transaction was in contemplation of insolvency and was carried out in order to give defendant preference over other creditors. Defendant's specific denial of such averments presents the issues upon this appeal.

Was the bank insolvent on September 26, 1931?

Practically all authorities define insolvency, in its legal sense, as existing whenever a bank, from any cause, is unable to pay its obligations in the ordinary or usual course of the business. See *Stone* v. *Dodge*, 96 Mich. 514 (21 L. R. A. 280); *Stone* v. *Jenison*, 111 Mich. 592 (36 L. R. A. 675); *Commonwealth, ex rel. Attorney General,* v. *Tradesmen's Trust Co. of Philadelphia*, 237 Pa. 316 (85 Atl. 363); *Steele* v. *Commissioner of Banks*, 240 Mass. 394 (134 N. E. 401, 20 A. L. R. 1203). The above definition excludes extraordinary demands, induced by panic and commonly evidenced by a run on the bank, but includes all demands to be anticipated in the ordinary conduct of banking.

Mr. Hudson knew the condition of the bank, for it was operated under his immediate supervision. The evidence disclosed a condition of impending insolvency on the date of the transfer, and such was the moving cause for the transaction. If the transfer was intended by the bank officer as a preference, in contemplation of insolvency, then the transaction was void. The intent of the transferee is not the test of invalidity but, if a part of a concerted movement toward gaining the preference it may not be ignored.

The record brings us to agreement with the following findings made by the circuit judge:

"Practically immediately after the closing of the Greenville Bank, the president and cashier of the Sheridan bank became frightened at the situation and adopted the policy of refusing payment of (savings) deposits * * * and continued such policy with some slight modification dependent upon the necessities of the borrower to and until the doors of the bank were finally closed. The fact that the bank was even then in a dangerous situation on account of its inability to make collection or to borrow at other banks, or of any other person; is amply attested not only by the correspondence which passed between John R. Hudson and the bank cashier, Mr. Walden, but also by the testimony of Mr. Walden as to their conversations in that regard, and finally by Mr. Hudson's admissions on the trial of the case. Continuously the bank reserves were very much impaired and much below the legal requirements and its surplus and undivided profits were wiped out. Attempts were made to borrow of other banks and from the Gleaners and from the directors themselves, but without success. There was also talk of the stockholders submitting to a voluntary assessment in order to replenish the resources of the bank,

but nothing materialized. In the meantime also various depositors, having been refused payment, gave the requisite 90-day notice in writing of a legal demand before instituting suit.

"On September 4, 1931, Mr. Walden made his usual daily report to Mr. Hudson as to the condition of the bank. After setting forth the various items of information and the figures relating thereto, he added:

" 'Since balancing we have sent to Peoples Wayne Bank checks totaling $355.94, which would take care of the overdraft and enough for their service charge and unless something comes in tomorrow, it looks as though that would be about all there is to it unless you fellows can make a raise over there some place. With the $2,000 currency that came after we balanced it makes us $7,067.70 and that is all, and that is currency in bank and nothing in Detroit.'
* * *

"No loan was obtained from the defendant, * * * Defendant, on the other hand, desired the payment of its deposit in full. Mr. Hudson, its treasurer, desired the same thing. Payment could not be made in cash without closing the doors of the bank. The bonds owned by the bank were not acceptable. The mortgage list was the only feasible source from which such payment could be made. The use that was made of the list of mortgages was to select therefrom mortgages that would be acceptable as such payment. Three were selected. Mr. Hudson took the initiative and was an active participant in and promoter of the deal. * * *

"In this transaction Mr. Hudson assumed to represent and act for the bank. His was the mind that conceived the arrangement and his was the will, the judgment and the executive hand that consummated it—in the language of cashier Walden, 'he was the boss.' The cashier to all intents and pur-

poses abdicated his position and yielded to him his authority without protest. * * *

"In no case of refusal (of savings deposits) did any 'run' exist. The refusal was caused by the inability to pay the depositor in the ordinary course of business. Such refusals constituted not only acts of insolvency but also establish the fact of insolvency itself. * * *

"Again in making payment in full to one depositor as in the instance involved in this case and in refusing to make any payments to others, as was done in the instance of * * * many others, the bank was not only guilty of actual insolvency but also of granting, knowingly and intentionally an unlawful and actual preference. It is noteworthy in this connection that Anna Mae Carstenson was refused payment of her deposit of $1,000 on the 26th day of September, 1931, the very day of the payment by the bank to the defendant. The cashier refused to pay cash to her and offered her no mortgage or other security.

"The bank could not pay in cash and Mr. Hudson knew it. He also knew there was no longer any reasonable expectation or probability of being able to redeem the bank's fortunes and continue its business. He knew that nothing short of a miracle would suffice to thaw out its frozen assets and to restore value to its worthless bonds. In this emergency he took no chances, nor did any officer, director or stockholder of the bank by loaning or advancing any money to the bank. Doubtless defendant knew that the bank could not pay in cash. Its officers, including Mr. Hudson, obviously knew it. They never demanded or even requested cash. They were glad to get mortgages and to get them so easily. By the aid of their treasurer, who was also the bank president, the payment was thus made behind the back of the board of directors and without the knowledge of or notice to such board or any member thereof. No

chances were taken of objections from that source. The manner as well as the medium of payment was unusual and not in the ordinary course of business.

\* \* \*

"Furthermore the evidence is convincing that in arranging for the payment in question the purpose of the officers of the Gleaners, including John R. Hudson, the treasurer, was to obtain a preference over the other creditors and depositors of the bank."

The decree is affirmed, with costs to plaintiff.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.