### DAUGHERTY *v.* PARK.

1. TRIAL—REQUESTS TO CHARGE—ASSUMPSIT—FRAUD.

In action against bank and one of its officers for fraudulently inducing plaintiff to pay stock assessment and subsequently to transfer stock, refusal to give requested instructions appropriate only to an action of assumpsit, not to fraud, *held*, proper, where declaration was in tort and no amendment had been made.

2. BANKS AND BANKING—INSOLVENCY—EXTRAORDINARY DEMANDS.

A bank is insolvent when, from any cause, it is unable to pay its obligations in the ordinary or usual course of business, thus excluding extraordinary demands induced by panic and commonly evidenced by a run on the bank.

3. DAMAGES—FRAUD—VALUE OF BANK STOCK.

In action for fraudulently inducing plaintiff to transfer bank stock, value of such stock is determinable as of day of transfer and actual future recoveries in value of bank assets cannot affect the question.

4. SAME—VALUE OF BANK STOCK—INSOLVENCY—OTHER CONSIDERATIONS.

In determining value of stock of bank, operated as a going concern in May, 1933, other considerations than insolvency such as character of management, record of past earnings and dividends, present market and actual values, kind of assets, trend of the market, chances for improvement in business and recoveries from rise in worth of securities and the like *held*, pertinent in action against bank and one of its officers for fraudulently inducing plaintiff to transfer her bank stock.

5. FRAUD—VALUE OF BANK STOCK—QUESTION FOR JURY.

In action for fraudulently inducing plaintiff to transfer her bank stock, value of the stock *held*, question for jury to determine under all the circumstances.

6. TRIAL—CURING ERROR—FRAUD.

Court's inadvertent statement that fraud must be *firmly* established *held*, cured by balance of charge on burden of proof.

7. EVIDENCE—IMMATERIAL REPORTS.

In action for fraudulently inducing plaintiff to pay stock assessment and subsequent transfer of her stock, admission over her objection of report of banker's association as to activities of one of defendants *held*, error, where report contained nothing material to the case.

8. SAME—BANK EXAMINERS—OFFICIAL REPORTS—HEARSAY—CROSS-EXAMINATION.

Admission of testimony of deputy banking commissioner based on official reports of bank examiners that defendant bank was insolvent when plaintiff is alleged to have been fraudulently induced to transfer her stock *held*, error, since information upon which he based his opinion was hearsay, was not shown

to have been true in fact and amounted to making bank examiners witnesses without opportunity for plaintiff to cross-examine them.

9. FRAUD—TRIAL—INSTRUCTIONS.

In action against bank and one of its officers for fraudulently inducing plaintiff to transfer her stock therein on claimed representation that she was liable for a 300 per cent. assessment, her request to charge that no such liability existed should have been given at least in substance.

10. EVIDENCE—INTENT.

In action against bank and one of its officers to recover sum paid as assessment and value of bank stock alleged to have been transferred as result of scheme to defraud plaintiff, conversations between officer and transferee of stock with relation to condition of bank and remedy necessary or advisable under the circumstances *held*, admissible as bearing upon officer's intent.

11. TRIAL—DETAILED STATEMENT OF TESTIMONY BY COURT.

In action for fraudulently inducing plaintiff to pay bank stock assessment and later transfer stock to party willing to pay another assessment, court's detailed statement of facts *held*, very fair notwithstanding omission of some facts favorable to plaintiff but is criticized as a practice fraught with danger of committing error.

Appeal from Tuscola; Cramton (Louis C.), J. Submitted January 8, 1936. (Docket No. 14, Calendar No. 38,669.) Decided March 2, 1936.

Case by Jane Daugherty against Samuel R. Park and Peoples State Bank for damages for fraudulent misrepresentations as to the value of stock and for a sum paid on an alleged bank stock assessment. Verdict and judgment for defendants. Plaintiff appeals. Reversed and new trial granted.

*Kinnane & Manary,* for plaintiff.

*Roland O. Kern,* for defendants.

FEAD, J. Defendants had verdict of a jury and judgment in action of fraud to recover $2,000 and the value of 20 shares of stock in defendant bank.

Plaintiff owned 20 shares of stock of The Peoples State Bank of Caro. In December, 1931, defendant Park, then cashier and later president of the bank, came to plaintiff's home and, she said, he told her, in substance, that the stockholders were required to pay into the bank a 100 per cent. assessment, and induced her to pay in $2,000.

Defendants claim the matter was presented to plaintiff as a plan of voluntary contribution. The court submitted the issue of fraud to the jury. Plaintiff complains of refusal to give several requests to charge thereon but they were properly refused because they were appropriate only to an action of assumpsit, not to fraud, the declaration was in tort, and no amendment had been made.

May 10, 1933, Park again went to see plaintiff and, she claims, told her the stockholders were required to pay 300 per cent. assessment on their stock; if they did not do so he would close the bank; she was subject to liability of 300 per cent.; his uncle, Samuel Robinson, of Philadelphia, a wealthy man, would take the stock of any holder unable to pay and himself advance the 300 per cent. assessment. After attending a meeting of stockholders, in which the matter was discussed, but not much, she delivered her certificate, signed by her, to a representative of the bank; and at the same time she executed a writing in which Robinson, who had not yet signed it, agreed to save her harmless against liability on the stock.

Two days later plaintiff's son demanded of defendants return of the $2,000 and certificate of stock.

Plaintiff's theory is that 300 per cent. assessment was unnecessary and that the transaction was a

fraudulent scheme on the part of Park and Robinson to acquire plaintiff's stock. It is conceded that intent of defendants to defraud plaintiff is an element of the cause of action.

The defense is that, on appraisal of the assets of the bank on or about May 3, 1933, the officers found it to be insolvent; a 300 per cent. assessment was necessary to reinstate a capital structure; Park discussed the situation with Robinson; the latter agreed to accept the stock of those unable to pay and to put money into the bank to save the family name; and plaintiff assigned her stock gladly and with full knowledge of the facts. Robinson acquired 190 shares in this manner and paid $57,000.

The bank had been closed during the bank holiday proclaimed by the governor and president, but had reopened on March 15th, and continued to operate. On May 10th its general ledger disclosed a capital structure of about $134,000, consisting of $40,000 capital, $40,000 surplus, $14,000 undivided profits, and $40,000 stockholders' accounts. In the appraisal made by the officers of the bank about May 3d, United States government and general listed bonds were valued at the market quotation and were depreciated $85,874. A potential depreciation on unlisted real estate and industrial bonds of $67,955 was included in the computation, Park stating, however, that he had valued them at more than they could have been sold for through brokers. The sum of $2,000 was charged for doubtful notes. Deposits of $45,500 in closed national banks in Detroit and Bay City were figured as total loss. The $120,000, contributed by Robinson and the other stockholders, was added to capital structure and reserves for depreciation and possible losses were set up against it.

The principal questions are upon the charge of the court and the admission of testimony.

Upon the matter of damages, the court charged the jury that plaintiff's stock had no value if the bank was insolvent when the transfer of her certificate was made and that insolvency and value were to be ascertained from the market value of the assets of the bank—the price at which they could have been sold on that day. Defendants contend there was no evidence to sustain a verdict for damages because the stock had no value under the charge of the court.

In *Greene* v. *Ancient Order of Gleaners*, 267 Mich. 488, this court said:

"Practically all authorities define insolvency, in its legal sense, as existing whenever a bank, from any cause, is unable to pay its obligations in the ordinary or usual course of business. See *Stone* v. *Dodge*, 96 Mich. 514 (21 L. R. A. 280); *Stone* v. *Jenison*, 111 Mich. 592 (36 L. R. A. 675); *Commonwealth, ex rel. Attorney General*, v. *Tradesmen's Trust Co. of Philadelphia*, 237 Pa. 316 (85 Atl. 363); *Steele* v. *Commissioner of Banks*, 240 Mass. 394 (134 N. E. 401, 20 A. L. R. 1203). The above definition excludes extraordinary demands, induced by panic and commonly evidenced by a run on the bank, but includes all demands to be anticipated in the ordinary conduct of banking."

We agree with the court that the value of plaintiff's stock is determinable as of the day of the transfer and that actual future recoveries in value of the bank assets cannot affect the question. But the value of bank stock, either in open or limited market, seldom coincides with the market value of the assets of the bank less its liabilities because, as was pointed out by defendant Park, the assets continually fluctuate in value.

It does not appear that there was any actual market for the stock in the community. The case pre-

sents many factors which would appeal to a person in considering purchase of stock, bear upon its value and, therefore, need consideration, none of them conclusive, but each having its effect. The fact that the bank had been permitted to reopen, when others were put into the hands of receivers or conservators, might indicate to a jury that it was in substantial condition and might fairly be expected to be able to continue in business and to have advantage of recoveries. The appraisal was made at the time of great uncertainty and economic distress. There was no evidence of a run or prospective run on the bank after it had reopened which would demonstrate a necessity of forced sale of assets. Consequently, it was a going institution; and other considerations than insolvency as defined by the court were pertinent to value, such as the character of the management, the record of past earnings and dividends, present market and actual values, the kind of assets, the trend of the market, chances for improvement in business and recoveries from rise in worth of securities, and the like. The value of the stock was for the jury to determine under all the testimony, and was not restricted to a single definite test. *Schroeder* v. *State of Wisconsin,* 210 Wis. 366 (244 N. W. 599, 250 N. W. 185, 87 A. L. R. 496).

The court inadvertently stated that fraud must be *firmly* established. We think, however, this error was cured by the balance of the charge on the burden of proof and the jury was not misled.

Over plaintiff's objections, the court admitted a report of a committee of the Michigan Bankers Association relative to defendant Park's activities in seeking to obtain release by the Federal government of deposits of State banks in national banks. The report contained nothing material to the case and its admission was error.

The court permitted the deputy banking commissioner to testify from official reports of bank examiners that defendant bank was insolvent in May, 1933. This was error, because the information upon which he based his opinion was hearsay, was not shown to have been true in fact, and amounted to making the bank examiners witnesses to value of assets without opportunity in plaintiff for cross-examination.

In view of plaintiff's claim that defendant represented she was liable for a 300 per cent. assessment, plaintiff's request to charge that no such liability existed should have been given, at least in substance.

Because plaintiff claimed a scheme to defraud her, conversations between defendant Park and Robinson, with relation to the condition of the bank and the remedy necessary or advisable under the circumstances, were admissible as bearing upon Park's intent.

In the charge the court engaged upon a detailed statement of the testimony and, as is practically unavoidable, plaintiff complains of the failure to state facts favorable to her. The statement was very fair, we cannot say it was prejudicial, but the practice has its dangers by way of increasing chances for error.

Reversed, with costs and new trial.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, POTTER, and TOY, JJ., concurred.