# NEWARK DISTRIBUTING TERMINALS COMPANY
## *v.* JOHN D HOSPELHORN, Receiver.

[No. 48, January Term, 1937.]

*Decided April 9th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHN-SON, JJ.

*James Thomas,* with whom were *Knapp, Tucker & Thomas* on the brief, for the appellant.

*Alexander Armstrong and J. Purdon Wright,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The National Distributing Properties, Inc., a Maryland corporation, called herein the Corporation, on October 1st, 1930, transferred and assigned to the Baltimore Trust Company as trustee, called herein the Trust Company, also a Maryland corporation, a first mortgage gold bond for $600,000, bearing interest at the rate of 6½ per cent. per annum, secured by a mortgage from the Newark Distributing Terminals, Incorporated, a Maryland corporation, called herein the Terminals Company, to the said Trust Company, to secure the payment of the principal and interest of "Newark Distributing Terminals First Mortgage Collateral Trust 6% Sinking Fund Gold Bonds" issued by the National Distributing Company, aggregating $600,000.

The mortgaged property comprised certain tracts or parcels of land and improvements thereon located in the City of Newark, in New Jersey, and was subject to a lease to the Great Atlantic & Pacific Tea Company, for a term ending October 31st, 1940, at an annual rental of $61,437.

Under the deed of October 1st, 1930, the Corporation covenanted to pay to the trustee $4,450 monthly, and from those sums the trustee was required to set aside so much as was required to pay the interest accruing on the bonds, and to hold the balance as a sinking fund for the redemption or purchase of the bonds. Article 7 of the deed, which relates to the powers, obligations, and protection of the trustee, contained, among others, these provisions: "The Trustee shall be entitled to reasonable compensation for all services by it rendered hereunder and the Corporation agrees to pay such compensation from time to time upon demand. * * * Any moneys received by the

Trustees under any of the provisions of this indenture shall be treated by it, until it is required to pay the same out conformably herewith as a general deposit, without any obligation or liability, for interest save as may otherwise be agreed, upon in writing between the Trustee and the Corporation."

On October 1st, 1932, the Corporation, the Terminals Company, and the Trust Company executed a "Supplemental Trust Indenture," under which the Terminals Company assumed all the obligations created by the deed of October 1st, 1930, and the Corporation was released therefrom. In it the Terminals Company agreed to have all rentals from the mortgaged property paid to the trustee, to be applied as follows: An amount equal to one-twelfth of the amount of the real estate taxes assessed against the mortgaged property in the preceding year was to be set aside each month for the payment of real estate taxes, one-twelfth of the amount payable annually as interest on the bonds was to be set aside monthly for the payment of such interest, one-twelfth of the amount estimated by the Terminals Company to be necessary for annual disbursements for tax refunds, federal and other taxes and charges, insurance, maintenance, minor repairs, and other corporate expenses, was to be set aside monthly to cover those expenses. The balance remaining after those deductions was to be "set aside" as a sinking fund to purchase or retire outstanding bonds.

On March 4th, 1933, the Baltimore Trust Company had collected, and then held for the uses and purposes of the trust, rentals aggregating in amount $32,069.30.

Prior to that date, on February 24th, 1933, the Governor of Maryland had proclaimed in that state a bank holiday, which was extended by other proclamations to March 4th, 1933, when, under the Emergency Banking Act, chapter 46 of the Acts of 1933, the bank commissioner of the State of Maryland took custody, control, and management of all state banking institutions in that state, including the Baltimore Trust Company, which remained in his custody and control until January 5th,

1935, when, in a proceeding brought in the Circuit Court of Baltimore City by the State against the Trust Company, John D. Hospelhorn was appointed a receiver for it.

On October 28th, 1936, the Newark Distributing Terminals Company filed in that proceeding an amended petition in which it alleged that the said sum of $32,069.30, since reduced by dividends to $10,011.89, was due and payable to it on February 25th, 1933, by the Trust Company in its capacity as trustee, that the Trust Company had in its possession funds sufficient to pay all claims against it in its fiduciary capacity in full, and that it was entitled either by way of preference or recapture to collect the full amount of its claims from the assets in the hands of the receiver before any payments therefrom were made to general creditors of the Trust Company, and it so prayed. As a basis for that relief the petitioner asserted, first, that it was within the protection of Code, art. 11, sec. 48, as amended by chapter 546, section 1, of the Acts of 1933, and, second, that it was entitled to recapture its claim from the funds in possession of the receiver because, at the time it closed its doors, the Trust Company held the fund claimed by the petitioner as a trustee *ex maleficio*.

To the amended petition the receiver demurred, the court sustained the demurrer and dismissed the petition, and from that decree the petitioner appealed.

In view of the decision in *Corbett, etc., v. Hospelhorn, ante,* page 257, 191 A. 691, the only questions open on the appeal are whether the fund claimed by the appellant was a trust fund, held by the Trust Company in its trust capacity, or whether it was a debt due by it in its banking capacity, and, if it is a trust fund, whether it is such a trust fund as is entitled to priority, under Code, art. 11, sec. 48, as amended by the Acts of 1933.

Before Code, art. 11, sec. 48, Acts of 1933, ch. 546, sec. 1, can be invoked to support a preference claimed for a debt due or owing by an insolvent corporation, it must appear that the debt is due or owing by the corporation in a fiduciary capacity. It is settled law that

the relation between a bank and a general depositor is not of a fiducial character, but merely that of debtor and creditor. It is also true that in this state a corporation may be authorized to act both as a trustee and as a bank, and that, when so authorized, it may as a trustee deal with itself as a bank *(Real Estate Trust Co. v. Union Trust Co.,* 102 Md. 41, 61 A. 228; *Ghingher v. O'Connell,* 165 Md. 267, 272, 167 A. 184; *Corbett v. Hospelhorn, supra),* without committing a breach of trust. *Id.* It may therefore, acting as a trustee, deposit trust funds in its own banking department, and the relation between it as trustee depositor and its banking department as depositary will be controlled by the manner in which the deposit was made, to the same extent as if it had made the deposit in another and different bank, except that, if the deposit in its own banking department involved a breach of trust, it would be charged with notice thereof, and might be held to be a trustee *ex maleficio. Corbett v. Hospelhorn, supra.*

A general deposit is inconsistent with any relation other than that of debtor and creditor *(Morse on Banking,* secs. 289, 568), and, in the event of insolvency, the depositor is a simple creditor, has no right to any preference, but must come in on a parity with other ordinary creditors, *Id.; First Denton National Bank v. Kenney,* 116 Md. 24, 81 A. 227. Deposits made in ordinary course without any qualification or restriction are presumed to be general. *Morse on Banking,* sec. 568, subsec. c.

A specific deposit is where money is deposited for some specific purpose, such as the payment of interest on a mortgage, or to a third person at some given time, or for the payment of taxes, or other debt or charge *(Id.,* sec. 185), in which case title to the money does not pass to the bank but remains in the depositor until the money is properly paid out, the bank holds it as a trustee, and upon its failure to so pay it out it may be sued in equity for a breach of trust. *Id.; Taylor v. Benham,* 5 How. 233, 12 L. Ed. 130; *In re Interborough Consolidated Corp.* (C. C. A.) 288 Fed. 334.

It appears from the record that the money of which the fund here claimed is a part was realized from checks drawn to the order of the "Baltimore Trust Co., Trustee," indorsed in blank by the "Baltimore Trust Co., Trustee," and transmitted by the Trust Company to the Federal Reserve Bank of Richmond for collection and "credit to the account of the" Trust Company with the Baltimore Branch of the Federal Reserve Bank of Richmond, and that the checks were paid and the proceeds were credited to the account of the Trust Company with that bank. It further appears that the Trust Company kept at all times on deposit with the Federal Reserve Bank an amount in excess of that realized from those checks which are the basis of the claim in this case, "subject to withdrawal on demand." The only inference permitted by those facts is that the Trust Company deposited the money, realized from the checks drawn to it as trustee, without qualification or restriction, in its general banking account with the Federal Reserve Bank, for there is nothing to indicate that the Trust Company in its trust capacity as contrasted with its capacity as a bank carried any account with that bank.

Apart from the provisions of the deed of October 1st, 1930, and the supplemental deed of October 1st, 1932, which required the moneys collected by the trustee to be held and applied to specified purposes, there can be no doubt that, in respect to so much of them as was deposited by the trustee in its banking department, the relation between its trust department and its banking department was that of debtor and creditor, and that it was indebted to the depositor as an ordinary debtor and not in a fiduciary capacity. But, while those deeds definitely charged the trustee with the duty of applying the moneys collected to specified purposes, the deed of October 1st, 1930, contained this provision, which was imported into the supplemental deed of October 1st, 1932, that "any moneys received by the Trustees * * * shall be treated by it until it is required to pay the same out conformably herewith as a general deposit, without any obliga-

tion or liability for interest. * * *" That provision prevents any inference that the intent of the agreement was that the trustee should keep the moneys collected in its possession as trustee intact, but on the contrary makes the conclusion inevitable that it was intended that the trustee should deposit the same as a general deposit in its banking department. For in its trust department it took no "general" deposits, but only received such deposits in its banking department. The mere deposit of the moneys in its banking department therefore involved no breach of trust, if its selection of a depositary was consistent with reasonable care and prudence. The trust department and the banking department, apart from the question of notice, must be treated as separate entities. *Real Estate Trust Co. v. Union Trust Co., supra; Ghingher v. O'Connell, supra; Corbett v. Hospelhorn, supra.* If the trustee in selecting the depositary acted in good faith and with discretion, it would not have been liable for any loss resulting from the failure of the bank, unless it permitted the deposit to remain in the bank after it knew, or should have known, that the financial condition of the bank indicated that loss would result unless the fund was withdrawn. *Perry on Trusts,* sec. 443. As has been said, the original deposit involved no breach of trust merely because made in its own banking department, since it was authorized by the instruments creating the trusts, unless when made the trustee had reason to doubt the financial soundness of the depositary.

Without restating facts which have been set out at some length in *Corbett v. Hospelhorn, supra,* and *Dunlop Sand & Gravel Corporation v. Hospelhorn, ante* p. 279, 191 A. 691, it is sufficient to say that, when these' deposits were made, the condition of the Trust Company was, within the knowledge of the trustee, such as to permit the inference that the act of the trustee in depositing the trust funds with it was inconsistent with that degree of care and prudence imposed upon the trustee by the trust instruments. It cannot therefore be said that the

trustee as such is not indebted to the beneficiaries in a fiducial capacity.

Assuming that the Trust Company is indebted to the beneficiaries in a fiduciary capacity, the final question is whether it is such a fiduciary capacity as entitles the beneficiaries to priority in the distribution of the estate of the insolvent corporate trustee.

The mere fact that the depositor held the fund as a trustee did not make the depositary a trustee even though it knew of the trust *(Gray v. Elliott,* 36 Wyo. 361, 255 P. 593, 53 A. L. R. 554, 564), unless the deposit was to its knowledge unlawful (37 *A. L. R.* 124; *Morse on Banking,* secs. 317, note 16, 590, note 2), and while acceptance of a deposit by a bank at a time when, to the knowledge of its officers, but not to the knowledge of the depositor, it was insolvent, might constitute it a trustee of the fund *ex maleficio (Pott & Co. v. Schmucker,* 84 Md. 535, 554, 36 A. 592, 35 L. R. A. 392, 57 Am. St. Rep. 415; *Steele v. Commr. of Banks,* 240 Mass. 394, 134 N. E. 401, 20 A. L. R. 1206), it would not have that effect, if the depositor also knew of the bank's condition *(Steele v. Commr. of Banks,* 240 Mass. 394, 134 N. E. 401, 20 A. L. R. 1206), for, if the depositor knew that the bank was insolvent when he made the deposit, the fraud which is the basis of rule would be absent. If the status of the deposit affected only the depositor and the depositary, since both knew the condition of the bank, the relation between them in respect to the deposit would be that of debtor and creditor. But it went farther than that, for it affected also the beneficiaries under the trust, so that the question is, if the depositary knew that the deposit involved a breach of trust, did its acceptance of it make it a trustee *ex maleficio* of the fund. In dealing with that question, consideration must be given to the fact that the depositor and the depositary were both integral parts of a single corporate entity, which had been appointed a trustee by the express language of the trust instruments. While the two must for certain purposes *(Real Estate Trust Co. v.*

*Union Trust Co.,* 102 Md. 41, 61 A. 228; *Ghingher v. O'Connell,* 165 Md. 267, 272, 167 A. 184) be treated as separate and distinct things, nevertheless there must be a point beyond which that artificial and extremely confusing doctrine, first announced in *Real Estate Trust Co. v. Union Trust Co., supra,* cannot be carried. It cannot be invoked to impose a trust upon a trust, nor to convert a trustee expressly appointed into a constructive trustee. In reality there is no difference in the nature of the office of a trustee expressly appointed, and one held to be such by implication. 82 *A. L. R.* 47; *Knatchbull v. Hallett,* (1879) L. R. 13 Ch. Div. 696. Both are fiducial in character, and the same legal principles are applicable to both. *Id.,* Williston in 28 Harv. Law Rev. 28. The mere fact, therefore, that the Trust Company violated an express trust imposed upon it as an expressly appointed trustee did not make it a trustee *ex maleficio,* for a constructive trust is only raised to impress a trust upon property where none does exist, but where one should exist. Where the property is already impressed with a trust, the necessity for raising a constructive trust is wanting.

If, therefore, the Trust Company committed a breach of trust in depositing the trust funds in its banking department when it had reason to know that loss was likely to result, that breach did not convert it into a trustee *ex maleficio,* but it continued to hold the fund under its original appointment as trustee. If the deposit was not unlawful, the beneficiary is not entitled to priority over general creditors of the trustee. *Am. Law Inst., Restatement Trusts,* secs. 74, 74c, 202, 84j. But, if it was the result of fraud and collusion, title never passed from the trustee, the property remained impressed with a trust, and may be recaptured as their property by the beneficiaries, if it can be identified and traced. *Steele v. Commr. of Banks,* 240 Mass. 394, 134 N. E. 401, 20 A. L. R. 1205, 1206.

But, in view of the definition of insolvency in *Coblentz v. State,* 164 Md. 558, 575, 166 A. 45, 88 A. L. R. 886,

it cannot be said as a matter of fact that the deposit was fraudulent and collusive, for, while subsequent events proved that when these deposits were made the trustee probably was insolvent, it does not appear that its officers were wholly unreasonable in expecting to carry it on without interrupting the payment of its obligations, and to restore it to a sound condition. In *Steele v. Commr. of Banks,* 240 Mass. 394, 134 N. E. 401, 402, 20 A. L. R. 1205, the court, after stating that receiving deposits when the bank is to the knowledge of its officers hopelessly insolvent is the equivalent of a "preconceived purpose not to pay, and is a fraudulent act," adds this: "On the other hand, simple insolvency, even of a bank, does not warrant the rescission of deposits if there are genuine and reasonable hope, expectation, and intention on the part of the officers of the bank to carry on its business and to recover sound financial standing. To warrant such rescission there must be the further fact that it is reasonably apparent to its officers that the concern will presently be unable to meet its obligations as they are likely to mature, and will be obliged to suspend its ordinary operation. The facts must establish the conclusion that the trust company accepted the deposit knowing, through its officers, that it would not and could not pay the money when demanded by the depositor." It is reasonably apparent that the officers of the Trust Company did expect it to continue to operate and to meet accruing demands when these deposits were made. Its officers and clientele had shown sufficient faith in it in September, 1931, to raise a guaranty fund of over seven and a half million dollars, the period was one of widespread, blind, and unreasoning panic, when all financial institutions were under a crushing pressure from the efforts of frightened depositors to withdraw their funds, and they should not be lightly convicted of fraud for trying to avoid accelerating or aggravating the common disaster by closing their doors, if they had a genuine and sincere hope of being able to continue in business. So that, even if it be assumed that the trustee was guilty

of a breach of trust in making the deposit, it cannot be said that the act of the depositary in receiving it was under the circumstances shown by the record in this case so unlawful or fraudulent that title to the fund did not pass to it.

Unless, therefore, chapter 546, section 1, Acts of 1933, Code (Supp. 1935) art. 11, sec. 48, applies to the trust under which the Trust Company received the fund claimed by the appellant, it is entitled neither to a priority over general creditors in the distribution of insolvent estate nor to recapture it on the ground that title never passed to the bank.

For the reasons stated in *Corbett v. Hospelhorn, supra,* and *Dunlop Sand & Gravel Co. v. Hospelhorn, supra,* which need not be restated here, it did not so apply, and the decree from which this appeal was taken will be affirmed.

*Order affirmed, with costs.*