# BETTY JEAN WRIGHT *v.* COMMERCIAL AND SAVINGS BANK

[No. 932, September Term, 1981.]

*Decided April 12, 1982.*

The cause was argued before GILBERT, C. J., and THOMPSON and MacDANIEL, JJ.

*Michael Bowen Mitchell* for appellant.

*Stephen M. Waldron,* with whom was *T. Carroll Brown* on the brief, for appellee.

MacDANIEL, J., delivered the opinion of the Court.

This case originated in the Circuit Court for Harford County when Betty Jean Wright (appellant) filed suit against Commercial and Savings Bank (appellee, hereinafter Commercial) and Verlon Cleveland Wright, her ex-husband, in a five-count declaration for damages arising out of Commercial's compliance with an order from Verlon to remove her name from their joint checking account. Trial began before a jury on February 13, 1980, and at the end of appellant's case on February 21, 1980, the trial judge granted Commercial's "Motion for a Directed Verdict." The case was submitted to the jury as to Verlon and a verdict of $150,000 in favor of appellant was rendered on February 22, 1980. Subsequent to post-trial motions filed by Verlon, a remittitur consent was filed by appellant and judgment absolute against Verlon for $75,000 was entered on May 26, 1980. Verlon filed a timely appeal to this Court which by order of this Court dated February 9, 1982, was dismissed for failure to file briefs. In this appeal we are only concerned with appellant's attack on the granting of the directed verdict in favor of Commercial.

## Facts

Appellant and Verlon Wright had a checking account since 1964 at Commercial in the trade name of Level Building Supply, subject to the order of appellant or Verlon Wright.[1] Following marital problems, Verlon, on June 16, 1976, went to Commercial and instructed Commercial to remove the name of appellant from the checking account, which Commercial did. Appellant went to Commercial in August 1976 and asked for a check in the amount of $500 to

---

1. We recognize that the account was in the name of Level Building Supply and that appellant and Verlon Wright were not "owners" of the account, but merely accorded the privilege of withdrawal. The parties have treated the account as though Verlon and appellant were in fact the "owners"; we shall do the same. We do not indicate whether the result would be different if the account were treated as "business account" and the Wrights merely "users" of that account.

be drawn against Level Building Supply. Since appellant's name was no longer on the account card, her request was denied. Appellant went to Commercial the following day, repeated her request, and was again rebuffed.

At oral argument, appellant abandoned her claims that the trial court committed reversible error in finding no breach of fiduciary duty and no wrongful dishonor, but relied solely on her contention that the appellee breached its contractual obligation to appellant.

The parties have agreed to the following facts:

1. The account opened in 1964 was a joint checking account with the right of survivorship, and that either party could withdraw part or all of the account at any time.

2. There was no other written evidence of the contractual relationship except that expressed on the signature card.

3. That the signature card did not contain any express language giving the Bank authority to honor a request by either party to strike the name of the other from the signature card.

4. The account contained $3,602.91 at the time appellant's name was stricken from the signature card.

Thus, the question for determination can be stated as follows:

> Does a contractual relationship that gives a joint depositor the right to withdraw the entire balance of a joint checking account also give a joint depositor the right to order the depository bank to remove the co-owner's name from the joint checking account?

The parties to this appeal appear to have no disagreement as to the basic law that:

1. In reviewing the propriety of the granting of a motion for directed verdict the rule is that all evidence and inferences rationally drawn therefrom must be considered in the light most favorable to the party against whom the motion is made. *Derby v. Jenkins,* 32 Md. App. 386 (1976).

2. The relationship between a bank and its depositors is

as stated in *University National Bank v. Wolfe,* 279 Md. 512 (1977), at 514-15:

> "Almost a hundred years ago this Court found that the relationship between a bank and its depositor was 'perfectly well settled'. *Hardy v. Chesapeake Bank,* 51 Md. 562, 585 (1879). The relationship, which has been universally recognized, 5A *Michie on Banks and Banking* § 1 (1973), and consistently followed in this State to the present time, is that of debtor and creditor, with the rights between the parties considered as contractual, and derived by implication from the banking relationship unless modified by the parties. *Sand & Gravel Corp. v. Hospelhorn,* 172 Md. 279, 287, 191 A. 701 (1937); *Terminals Co. v. Hospelhorn,* 172 Md. 291, 298, 191 A. 707 (1937); *Pritchard v. Myers,* 174 Md. 66, 76, 197 A. 620 (1938); *Magness v. Trust Co.,* 176 Md. 528, 531, 6 A. 2d 241 (1939); *Union Trust Co. v. Soble,* 192 Md. 427, 430-431, 64 A. 2d 744 (1949); *Keller v. Frederickst'n Sav. Inst.,* 193 Md. 292, 296, 66 A.2d 924 (1949); *Taylor v. Equitable Trust Co.,* 269 Md. 149, 155-156, 304 A. 2d 838 (1973)."

The dispute arises on how to apply the law. Appellant contends striking her name from the joint checking account without her consent or at least notice to her, was a breach of her contract with the bank. Conversely, appellee contends that this act is tantamount to one joint depositor withdrawing all the funds from the joint checking account and therefore no breach of contract occurred.

There are no Maryland decisions directly on point. We shall analyze the three Maryland cases cited by the parties:

(1) *Mercantile Savings Bank v. Appler,* 151 Md. 571 (1926);

(2) *Sturgis v. Citizens National Bank,* 152 Md. 654 (1927);

(3) *Wetzel v. Collins,* 170 Md. 383 (1936).

In *Appler,* husband and wife had a joint savings account with the bank, subject to the order of either, the balance at the death of either to belong to the survivor. No deposits or withdrawals could be made without the production of the passbook. Husband informed the bank that the original passbook had been lost, whereupon, without notification to the wife, the bank issued a duplicate passbook to the husband. In fact, the wife had the original passbook, and was unaware that husband had lied to the bank. Husband, with this duplicate passbook, withdrew all the funds from the joint account. Wife sued the bank for breach of contract. The Court agreed with the wife and found that the bank had breached its contract with her by failing to notify her of the actions of her husband. Other than to establish that the relationship between the bank and its depositors is a contractual one, this case is completely inapposite to the case at bar.

In *Sturgis,* Mr. Sturgis had a sizable sum in his own name deposited in a savings account at the bank. After advice from the bank he changed this to a joint account with his niece but subject to withdrawal only by himself. Shortly thereafter the bank suggested a change so that withdrawal could be made by both Sturgis and his niece, which was immediately done by him. After Mr. Sturgis' death wife attacked claiming an invalid gift. The Court found the gift to be valid stating that "the depositor had full power to make the change, clearly intended that it should be made as it was, and so expressed himself." Once again we see that this case is clearly inapposite to the case at bar.

In *Wetzel,* a joint savings account was opened in the names of "Miss Emma Collins in trust for herself and Alice H. Collins, joint owners, subject to the order of either, at the death of either to belong to the survivor." Following the death of the joint owner, Alice Collins demanded the money. The passbook was found in the possession of the association, and it appeared that a line had been drawn through the name of Alice H. Collins, leaving only the name of Miss Emma Collins. The Court upheld the chancellor in ruling in favor of Alice Collins and said at 388:

"The chancellor, in our opinion, decided the ownership of the fund in favor of appellee for either of two reasons; one, that there had been no change in the account; the other, that there was no proof that either of the two parties had authorized it."

The omission or want of any proof that the change was made by authority of any one having the power or authority so to do was decisive in that case.

However, *Wetzel,* at 387, stated:

"As the entry appeared originally on the passbook and the association's ledger, the money or deposit was payable at the order of either the nominal trustee, Emma F. Wetzel, or the *cestui que trust,* Alice H. Collin. *Whalen v. Milholland,* 89 Md. 199, 43 A. 45; and *Milholland v. Whalen,* 89 Md. 212, 43 A. 43; *Ghingher v. Fanseen,* 166 Md. 519, 172 A. 75; *Bollack v. Bollack,* 169 Md. 407, 182 A. 317, and the cases cited in the two last named. On these authorities there can be no doubt of the right of either trustee or *cestui que trust* to so change the account as to appropriate to her own use all the money on deposit in this account, or to transfer it from the names of both into her own name, regardless of whose money it was. On the authority of the cases just cited, if the account had been undisturbed, it would be the absolute property of the appellee by right of her survivorship. If one puts it in the power of another to so dispose of her money, the courts have no way to protect her against the betrayal of her confidence or folly, whichever you may call it." [2]

M.L.E. *Trusts,* Chap. 10, § 286 "Subsequent Deposits and Withdrawals," commenting on the holding in *Wetzel,* said:

"Where an account is subject to the order of either

---

2. None of the cases cited as authority involve the striking of a name as was done in the case *sub judice.*

party, each has a right so to change the account as to appropriate it to his own use or to transfer it from the names of both into his own name, and the use to which a sum withdrawn was subsequently put is of no concern to the bank." (Footnote omitted.)

We find further reference to the holding in *Wetzel* in 161 A.L.R. 71 (Power of one party to joint bank account to terminate the interests of the other), at page 92 under the subtitle "Striking name from account." Here A.L.R. interprets the language in *Wetzel* to mean that one joint depositor has a right to strike the name of the other joint depositor from the joint account, as this amounts to no more than a withdrawal of all the funds from the account by one of the joint depositors.

We now review out-of-state cases that support appellee's position.

In *Hoffman v. Vetter,* 192 N.E. 2d 249 (1962), Mr. Vetter and his first wife Louise held a joint account subject to the withdrawal of either, with the balance to belong to the survivor. Mr Vetter, after a divorce from Louise, had her name stricken from the account. Later, Mr. Vetter added his new wife as joint owner to this account. After Mr. Vetter's death, the first wife, Louise, claimed the amount left in the joint account on the theory that Mr. Vetter had no right to remove her name without her consent. The Court held that Louise had no interest in the joint account and at 251 stated:

"When Wallace G. Vetter had his name placed on the ledger sheet, he in effect withdrew the then joint account, and made such account an individual bank account."

The Court of Appeals of Kentucky in *Bealert v. Mitchell,* 585 S.W. 2d 417 (1979), was required to determine the ownership of five joint savings certificate accounts opened by Robert L. Erd and Allene S. Erd. Mr. Erd on April 10, 1975, had Mrs. Erd's name removed from all joint savings accounts in their names. An officer of the saving association required Mr. Erd to present a general power of attorney and also

execute an instruction document before Mrs. Erd's name was removed from the accounts. On August 14, 1975, Mr. Erd returned to the financial institution and requested that her name be removed from the same accounts and directed that they be placed in the name of his daughter by an earlier marriage. Although recognizing that Mrs. Erd consented to the withdrawal of her name, the Court stated at 418:

> "It is our opinion that the power of attorney was not necessary because the language of the agreement between the parties clearly provided for the right to withdraw and all necessary rights directly related thereto."

also on page 418 the Court said:

> "Any interest Mrs. Erd had in the accounts was terminated by her husband when he removed her name from the accounts. This action was tantamount to a withdrawal of the funds. The record indicates that the only reason Mr. Erd did not withdraw the money from the accounts was to avoid the loss of interest and a penalty charge. We believe it is obvious that the right to withdraw encompasses the right to delete the name of another on a joint account."

The Supreme Court of Arkansas addressed a similar issue in *McEntire v. Estate of McEntire*, 590 S.W. 2d 241 (1979). There J. L. McEntire maintained a checking account in his individual name, with sole authority to withdraw funds from the account. On December 13, 1975, a new signature card was executed by McEntire and his wife, permitting either to withdraw funds but retaining the account in the sole name of J. L. McEntire. In January 1976 McEntire caused a new signature card to be issued in his sole name withdrawing the authority of Mrs. McEntire to draw funds from the account. Subsequent to McEntire's death, his wife brought suit against his estate and the bank to recover the funds on deposit in the account. The Court said at 243-44:

> "The Bank was acting within its authority in permitting the removal of appellant as one authorized to draw funds from the account. The involved account was held in such a manner that J. W. McEntire (or Mrs. McEntire) could withdraw or receive payments or withdraw *all* funds therefrom, and any such payments made by the banking institution would be a complete discharge as to the amount paid. . . . In addition, the Bank was under no legal duty to notify appellant that she could no longer withdraw funds. . . ." (Emphasis in original.)

further on 244, the Court stated:

> ". . . it was thus unnecessary for Mr. McEntire to withdraw the funds and establish a new account as opposed to the course he followed in this instance. To require such would have been superfluous and equity regards substance rather than form. *Davis v. Jackson,* 232 Ark. 953, 341 S.W. 2d 762."

The Colorado Court of Appeals, Division I, also addressed a case similar to the instant case, in *Kacirek v. Mangan,* 489 P.2d 342 (1971). In that case the decedent, subsequent to opening joint accounts, executed new signature cards with the bank in an attempt to remove Mangan as a person authorized to make withdrawal from the accounts and to place the accounts in his name individually. The Court held that in changing the account to his sole name the decedent performed an act which was tantamount to withdrawing all of the funds from the joint account and to placing them in his individual account.

The case cited by appellant as authority for her position is *Siemanoski v. Union State Bank of South Chicago,* 242 Ill. App. 390 (1926). Here, husband changed his individual bank account to a joint one with his wife, subject to the order of either, balance payable to the survivor. Later he had the bank strike his wife's name from the account. Still later he then had the bank place his wife's name back on the account. After the husband's death the bank paid the balance in the

account to the wife. The administrator of the husband's estate sued the bank for wrongfully paying the balance to the surviving wife. The Court in *Siemanoski* found in favor of the bank by holding that the joint account had not been lawfully revoked in that the act of the husband in directing the bank to change the account was not equivalent to a withdrawal of the entire amount and a redepositing of the same.

## Summary

We are here concerned with the effect of the act of one of the parties to a joint account (subject to the order of either, with balance to survivor) in causing the bank to strike therefrom the name of the other. The inquiry is whether the action taken is to be deemed equivalent to a withdrawal of all the money and a redeposit thereof to the individual account of the actor. Although we have found no case directly on point with the factual posture of the case at bar, we can say that the language of those cases reviewed are in disagreement as to the end result. We are persuaded by the language of *Wetzel, supra,* and those out-of-state cases relied upon by appellee and therefore adopt the position that the right of a joint depositor to withdraw all the funds from a joint account encompasses the right to delete the name of another on a joint account.

The trial court was correct in granting appellee's motion for a directed verdict.

*Judgment affirmed.*
*Appellant to pay the costs.*