RIESTERER *v.* COUCHEZ.

1. WITNESSES—UNCONTRADICTED TESTIMONY OF ADVERSE PARTIES.
   Plaintiff, who called two defendants as witnesses, is bound by their uncontradicted testimony.

2. BANKS AND BANKING—LIQUIDITY OF ASSETS—PREFERENCES—GOOD FAITH.
   In bank receiver's suit to set aside transaction whereby agent of six joint depositors who had made demand upon bank with but $14,000 in cash for payment of $25,901.36 in savings ac-

* See 3 Comp. Laws 1929, § 14219 [Stat. Ann. § 27.914].—RE-PORTER.

count about a month previously, at the suggestion of the cashier, made an additional deposit of $2,600 and exchanged mortgages, which were in default in interest payments and of which the State banking commissioner was complaining, in the sum of $28,345.33 for an equal amount of the total deposit, defendant joint depositors, one of whom was a farmer and director of the bank but who knew nothing of the transaction until after it was completely carried out by defendant agent who was also one of the joint depositors but who is not shown to have had knowledge of the condition of the bank, *held*, not to have secured an illegal preference, where the transaction improved the cash position of the bank, was similar to other transactions consummated at about that time pursuant to the commissioner's insistence upon improvement of liquidity, and bank was not alleged or shown to have been insolvent at that time and continued to operate for 15 months more before being closed by the commissioner (3 Comp. Laws 1929, § 11946).

3. SAME—SAVINGS ACCOUNTS—RIGHT OF WITHDRAWAL—PREFERENCES.

Savings account depositors in a bank have a right to withdraw their money unless there is reason to believe such withdrawal would result in an illegal preference (3 Comp. Laws 1929, § 11946).

4. SAME—BAD FAITH—PREFERENCES—EVIDENCE.

In bank receiver's suit to set aside transactions which occurred some 15 months before bank was closed whereby defendants, then depositors of savings accounts, transferred their accounts to the bank in exchange for mortgages upon which interest payments were in default, record *held*, entirely lacking in showing any bad faith on the part of either defendants or bank officials so as to effect an illegal preferential payment to defendants (3 Comp. Laws 1929, § 11946).

5. SAME—TRANSACTIONS WITH DIRECTORS.

Transfer of mortgages to a bank director in return for moneys on deposit is valid where fair and made in good faith, especially where ratified by the directors and no question raised nor attempt made to repudiate the transaction during remainder of existence of the bank, a period of over a year (3 Comp. Laws 1929, § 11946).

Appeal from Macomb; Richter (Theodore J.), J., presiding. Submitted April 19, 1938. (Docket Nos.

128, 129, Calendar Nos. 40,032, 40,033.) Decided June 6, 1938.

Separate bills by Joseph E. Riesterer, receiver of Roseville State Savings Bank, against Henry Couchez and Henry Couchez, Joseph Couchez, and Couchez Brothers for return of certain mortgages, an accounting and other relief. Bills dismissed. Cases consolidated for appeal. Plaintiff appeals. Affirmed.

*Charles A. Retzlaff* and *George C. Watson,* for plaintiff.

*Angell, Turner, Dyer & Meek,* for defendants.

McAllister, J. The facts and legal principles applicable to the above cases are practically the same and they have been consolidated for hearing on appeal.

Plaintiff, receiver of the Roseville State Savings Bank, filed a bill to set aside the transfer of certain mortgages by the bank to defendants on the ground that such transfers were never authorized and were a constructive fraud on the depositors as illegal preferences. On the trial in circuit court, the trial chancellor found that defendants had acted in good faith and that they had received no illegal preferences. The bill of complaint was dismissed, and plaintiff appeals.

The defendants are six brothers, all engaged in farming. Five of them live on the same farm in Macomb county. Joseph Couchez lives a few miles away, in St. Clair Shores. All of the business dealings of the Couchez brothers were managed by Joseph. This applied not only to the operation of

the Couchez farm which is joint but also to the individual business dealings of the other brothers. Defendants did their banking business at the Roseville State Bank. Henry Couchez, one of the brothers, was a director of the bank.

During the spring and summer of 1931, the bank's financial situation was not satisfactory to its board or to the State banking commissioner because of the condition of its assets. They consisted largely of "frozen assets" and the bank's liquidity was lower than it should have been. Acting upon the suggestion of the State banking commissioner, the officials of the bank made an effort to improve the liquidity of their assets, realizing what they were able to on its mortgages, upon many of which discounts were allowed mortgagors in return for cash payments.

On September 11th, Couchez Brothers had on deposit in the bank the sum of $28,501.36. Included in this amount was a deposit made on that day in the amount of $2,600.00.

Approximately a month before September 11, 1931, Joseph Couchez had demanded all of the money on deposit in the name of Couchez Brothers. It was a savings deposit, however, and required a 90-day written notice before withdrawal, in case the bank required the same. Other depositors had also demanded their money from the bank and they were all paid in compliance with the regulations governing the bank. When Joseph asked for the money in this account, the cashier told him that it would help the bank if he could be paid off in mortgages under certain conditions. "The deal was such that for every mortgage he took out of the bank, he was also to buy an additional mortgage from the bank with new money, as he could obtain the money." This proposition was taken under consideration by Joseph Cou-

chez and during the month prior to September 11th, he looked over various properties under mortgage to the bank. Apparently Joseph Couchez was not able to raise sufficient money to carry out the proposed agreement. However, he was under no obligation to do so. It does not appear that he ever gave written 90-day notice; and the bank presumably could have delayed payment of cash by insisting upon a compliance with this rule. However, on September 11, 1931, the bank offered him 16 mortgages of the face value of $28,345.33. When this offer was made, Couchez Brothers had on deposit $25,901.36. Joseph Couchez made, therefore, an additional deposit in the amount of $2,600, giving defendants a sum on deposit in the amount of $28,501.36. Joseph Couchez, on behalf of Couchez Brothers, accepted the proposition of the bank and took a transfer of the mortgages, paying for them by transferring the deposit of Couchez Brothers in the amount of $28,345.33 to the bank and leaving a balance in said account in the amount of $156.03 to the credit of Couchez Brothers. Later, on October 19, 1931, Henry Couchez, who had at that time slightly more than $3,819.86 on deposit, accepted mortgages in like manner in payment for that amount of his account. On that date, the bank had cash on hand in the amount of approximately $14,000.

It is claimed by plaintiff that the transfers of the mortgages in question were void as preferences of one creditor over another in violation of 3 Comp. Laws 1929, § 11946 (Stat. Ann. § 23.53), which provides:

"All transfers of notes, bonds, bills of exchange or other evidences of debt owing to any bank, or of deposits to its credit, all assignments of mortgages,

or other security on real estate or judgments or decrees in its favor, or deposits of money, bills or other valuable things for its use, or for the use of its stockholders or creditors, all payments of money, either after the commission of an act of insolvency or in contemplation thereof, with a view to prevent application of its assets in the manner prescribed by this act, or with a view to the preference of one creditor over another, shall be held to be null and void."

Plaintiff's allegations in his bill of complaint set forth that Henry Couchez was a director in the bank and as such had information and intimate knowledge of the facts and conditions surrounding and pertaining to the operation of the bank, especially as to its financial condition on September 11, 1931, and prior thereto; "that relying on special information that Henry Couchez had received relative to the condition of the bank by virtue of his office as director, and conditions generally in any financial institution in Macomb county, the officers of said bank, on September 11, 1931, and prior thereto, were induced by the threats of the defendants to turn over the mortgages * * * to * * * defendants;" that "the officers of the bank relied upon the threats of the defendants to withdraw their funds and cause the closing of the bank; and that in reliance upon this threat, said mortgages were duly assigned to the defendants;" that "the defendants knew at that time that if their entire account was demanded from the bank that the bank would be compelled to close and that the subsequent agreement to take the mortgages in place of their savings account was a plan on the part of the defendants to obtain an undue advantage over other depositors in said bank, and that the defendants, and each of them, had particular knowledge of the condition of the bank by reason of the fact

that Henry Couchez was a director of the bank and said defendants conspired together to gain an undue advantage over the other depositors in the bank, and that taking advantage of the fact that Henry Couchez was a director in said bank, and taking advantage of special knowledge of condition of said bank by Henry Couchez, the defendants conspired and successfully obtained the mortgages hereinbefore listed from the said bank, amounting to $28,-345.33, to the irreparable damage and detriment of said bank and depositors thereof.''

A careful examination of the record discloses that none of the foregoing allegations was substantiated by any proof whatever. Both Joseph Couchez and Henry Couchez were called as witnesses by plaintiff, who is therefore bound by their uncontradicted testimony. Henry Couchez, who was a director of the bank, knew nothing whatever about the transaction whereby Couchez Brothers received the mortgages until after it was completely carried out and the assignments had been made. Joseph Couchez, who handled the transaction for defendants, Couchez Brothers, had no knowledge of the condition of the bank and there is no proof that he had received any information relating to its financial situation from Henry Couchez. The proposition of exchanging mortgages for the account of defendants was suggested originally by the cashier of the bank.

The former assistant cashier of the bank, a witness for the plaintiff, testified:

''I think there were one or more instances where people demanded their money from the bank and rather than give them the money, the cash, and deplete the cash of the bank, they were asked to take out a note or a mortgage in place of it. * * * I

know that a couple of Detroit parties, in settlement, they both got mortgages or something like that.''

"*Q*.   And, for payment of their deposit account?''

"*A*.   Yes, that is right.''

"*Q*.   You think that occurred before?''

"*A*.   Well, it was along about that time, whether it was before or after I could not say.''

Regarding the transaction with Henry Couchez, there is no evidence whatever of a plan on his part to make use of any special knowledge to secure an undue advantage over other creditors. He himself had little experience in banking matters and never went to the bank except to attend directors' meetings. There was no reason for any of the defendants to believe that the bank was in an insolvent condition or that their acts would cause it to become insolvent. The chief difficulties encountered by the bank were due to the fact that its assets were not sufficiently liquid. They consisted to a large extent in properties that could not readily be turned into cash. Among such frozen assets were mortgages, many of which, as in the case of those transferred to defendants in exchange for their deposits, were in default for a considerable time on interest payments. There was no reason apparent from the evidence why the defendants were not entitled to payment of their deposits in the ordinary course of business. The transaction with Couchez Brothers occurred September 11, 1931. Continuous deposits and withdrawals of accounts occurred during this period. On September 10, 1931, the day before the mortgage assignments, the withdrawals amounted to approximately $7,500; on September 11th, $35,000; on September 12th, $16,000. Taking these three days as an instance, the withdrawals in the regular course of business of the bank totalled nearly twice the amount of the

transaction with Couchez Brothers; and the transfer of the mortgages in question, instead of resulting in a withdrawal of cash, improved the cash position of the bank in the amount of $25,310.97 in exchange for "frozen" assets, of which the banking commissioner was complaining. Defendants as depositors had the right to withdraw their money unless there was reason to believe such withdrawal would result in an illegal preference.

A showing of bad faith on the part of defendants or the bank officials in any of the transactions with defendants is entirely lacking. See *Greene* v. *Ancient Order of Gleaners*, 267 Mich. 488. Joseph Couchez and Henry Couchez were called as witnesses by plaintiff's counsel and the trial chancellor found from their testimony and their appearance on the witness stand that there was no support for plaintiff's claim that either acted in bad faith. There was no allegation made by plaintiff that the bank was insolvent at the time the transfers occurred; nor was there evidence to support any claim of insolvency. Further, there is no evidence that the transfers were made or accepted in contemplation of insolvency. The fact that the bank remained open for 15 months thereafter, before it was closed by the State banking commissioner indicates that the bank must have been solvent at the time the assignments were made.

With regard to plaintiff's contention that the transactions in question should be rescinded on the ground that Henry Couchez, one of the directors of the bank, was interested as an opposite party to the bank, it is sufficient to say that the transaction is valid in such cases if fair and made in good faith. 4 Fletcher Cyclopedia Corporations, p. 3599. The

transactions were ratified by the directors of the bank, and no question was raised and no attempt to repudiate the action of the assistant cashier therein was made by the authorized officials of the bank at any time during the remainder of the bank's existence—a period of more than a year after the assignments of mortgages to defendants.

The decree of the trial chancellor dismissing the bill of complaint is affirmed, with costs to defendants.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.