**SAFE DEPOSIT & TRUST CO. OF BALTI-MORE v. MAGRUDER, United States Collector of Internal Revenue for District of Maryland.**

Civ. No. 420.

District Court, D. Maryland.

July 19, 1940.

Venable, Baetjer & Howard, Charles McHenry Howard and Stuart S. Janney, Jr., all of Baltimore, Md., for plaintiff.

Arthur L. Jacobs, Sp. Asst. to Atty. Gen., and G. Randolph Aiken, of Baltimore, Md., Asst. U. S. Atty., for defendant.

COLEMAN, District Judge.

This is a suit for the refund of $42,810.30, representing an alleged overpayment of income taxes, plus interest, by the plaintiff for the year 1935.

Plaintiff's right to recover depends upon whether it shall be found to be "a bank or trust company * * * a substantial part of whose business is the receipt of deposits, * * *" within the meaning of Section 117(d) of the Revenue Act of 1934, C. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Code, § 117 note. If the plaintiff is such a company, it is entitled, in computing deductions from its taxable income for the year 1935, to take into account losses from sales of bonds amounting to

$286,691.37. These losses were disallowed by the Collector on the ground that "receipt of deposits" was not "a substantial part" of plaintiff's business.

Section 117(d) of the Revenue Act of 1934 is as follows: *"Limitation on capital losses—(1) Corporations.* Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. If a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the receipt of deposits, sells any bond, debenture, note, or certificate or other evidence of indebtedness issued by any corporation (including one issued by a government or political subdivision thereof), with interest coupons or in registered form, any loss resulting from such sale (except such portion of the loss as does not exceed the amount, if any, by which the adjusted basis of such instrument exceeds the par or face value thereof) shall not be subject to the foregoing limitation and shall not be included in determining the applicability of such limitation to other losses."

There is no dispute as to the relevant facts, most of them having been stipulated into the case by agreement of the parties. The precise point presented has not heretofore been adjudicated, and the law has been amended by substituting other provisions for the one here under review. Act of June 29, 1939, 26 U.S.C.A. Int.Rev.Code, § 117.

In due course plaintiff filed its Federal income tax return for 1935 and paid the tax liability reported therein. The Commissioner of Internal Revenue, however, determined that there was due as additional tax for that year the sum of $42,-408.47, together with interest in the amount of $7,004.37, or a total of $49,412.84, which amount the plaintiff paid on January 12, 1939, and on February 4 of the same year filed a claim for refund in the amount of $45,930.76, which was rejected on December 6, 1939, and the present suit followed.

The plaintiff is a Maryland corporation. Its principal business is the management of trusts and estates, and acting as fiduciary or agent for individuals and corporations. It also acts as receiver for corporations, and as transfer agent, registrar and depositary under corporate reorganizations, etc. In the course of its business it receives deposits of money of the following types: (1) deposits of funds from trusts and estates that it manages; (2) deposits made for special purposes by individuals; (3) sinking fund deposits under bond indentures; (4) deposits for the payment of interest, dividends and principal on corporate bonds and stocks; and (5) deposits received as fiscal agent for various individuals and corporations.

The Company received its original charter in 1864 by Act of the Maryland Legislature, Laws 1864, c. 242, which incorporated it as a safe deposit company, the present day type of trust company being then unknown. By an amending act in 1868, Laws 1868, c. 394, the Company was granted the power to accept and execute trusts. Although by this amendment it had no power to do a banking business, this restriction was annulled by the Maryland law relating to banks and trust companies adopted in 1910 (Annotated Code of Maryland, Art. 11, Sec. 46), whereby the powers of trust companies incorporated under the provisions of this new law included all such powers as shall be usual in carrying on the business of banking, including "receiving deposits of money upon which interest may be paid; * * *" and any other transactions usual to banking; including "purchasing, investing in and selling stocks, bills of exchange, bonds and mortgages and other securities; * * *." Section 51 extended these powers and provisions to trust companies that had been previously incorporated under Maryland law. Thus, the prohibition against transacting a banking business (except the power to issue notes to circulate as currency) was repealed by the Act of 1910. Furthermore, so far as the power to receive deposits and to make a profit from them is concerned, this power was given to the Company by Section 6 of its original charter of 1864 above referred to.

There are really two questions: First, is the present plaintiff the kind of trust company contemplated by the Act of 1934? Second, even if it is, did the amount of deposits received by it in the year 1935 constitute a substantial part of its business?

In order that these questions may be correctly answered it is necessary, initially, to understand the background of the Revenue Act of 1934. This legislation introduced a new method of treating capital gains and losses for income tax purposes. Prior thereto, a corporation was permitted to offset capital losses against ordinary in-

come. The section here under review changed this ruling and provided that corporations should be limited in the amount of allowable deductions for capital losses up to the amount of capital gains plus $2,000. When the bill was originally introduced in the House it did not contain any exception relating to banks or trust companies. However, the Senate Finance Committee wrote into it the provision here under review, to the effect that banks and trust companies, a substantial part of whose business is the receipt of deposits, should be entitled to deduct the full amount of losses resulting from the sale of bonds, excluding premiums. The following excerpt from the report of this Committee is very pertinent to our present inquiry: "Third, in the case of the general limitation provided in the House bill that capital losses should only be allowed to the extent of the capital gains, your committee recommends that $2,000 of such excess of losses may be charged off from ordinary income. This protects the little taxpayer 'with little or no capital from being assessed a tax which he may be unable to pay. Your committee also recommends, in view of the necessary dealings of the banks and trust companies in bonds and other evidences of indebtedness of corporations and governments, that such banks and trust companies be permitted to deduct from ordinary income the loss resulting from the sale of such obligations in an amount not greater than the difference between the sale price and the par or face value." Senate Report No. 558, 73d Congress, Second Session, pages 12 to 13.

This is the extent of the light thrown upon the precise question here in issue, by what transpired in the Congress preceding the passage of the law. The reason for the exception was a recognition of the fact that banks and trust companies were accustomed to invest their deposits in Government and other bonds, which had greatly decreased in value.

■ Taking up the first of the two questions, namely, is the plaintiff company the kind of trust company contemplated by the Act, it is the position of the Government that it is not such a trust company because, as is claimed, it was the purpose of the statute to include within the provisions of Section 117(d) only such banks or trust companies as carried on an ordinary banking business; that is to say, that the word "deposits" as used in this section was intended to mean only those deposits made in a bank or trust company while engaged in the ordinary banking business,—in other words, deposits received from the public at large, such as (1) time deposits on which interest is usually paid, and (2) commercial deposits subject to withdrawal by check and paying no interest. The Government asserts that Congress did not intend the word "deposits" as used in Section 117(d) to include receipt of money under trust agreements in the normal course of doing a trust business, or while acting as fiduciary or agent. However, we are not impressed with this argument. We find nothing in the language or legislative history of Section 117(d) which indicates any intention to differentiate between kinds of trust companies, independently of the basic test provided in the section, that is to say, the test of whether a substantial part of the trust company's business is the receipt of deposits, because, while a by-product of its conduct of a trust business and not of an industrial banking business, the same fundamental debtor-creditor relationship is created by the deposits received by the plaintiff company. So this brings us immediately to a consideration of the second phase of the problem presented.

■ We find that at the close of the year 1935 the plaintiff company's deposits amounted to $12,574,327.95, and that at the close of the year 1934 they had been $8,454,825.42. Deposits made during the year 1935 aggregated $90,442,076.70, and withdrawals $86,322,574.17. Thus, considered from an absolute point of view, these amounts are unquestionably very substantial. Considered from a relative point of view, we find that at the close of the year 1935 the plaintiff company had a combined capital, surplus and undivided profits amounting to $6,182,157.47. The amount of deposits on hand at the same time was, therefore, approximately double this amount. In other words, depositors contributed to the funds used in the conduct of the plaintiff's business approximately twice the amount contributed by the stockholders.

Earnings from loans and investments for the year 1935 were $370,717.94, the company's total earnings for the same year being $1,367,548.55. While earnings from loans and investments cannot accurately be segregated, as to source, between capital, surplus and undivided profits on the

one hand and deposits on the other, if an apportionment be made by arbitrarily attributing to each a share of the earnings in the proportion that each bears to the total fund, we find that the company's earnings from deposits were two-thirds of $370,-717.94, or approximately $247,000. From this we must conclude that the earnings from deposits are a substantial part of the plaintiff's earnings. Measured in relation to the plaintiff's capitalization, there being outstanding 20,000 shares of stock, the earnings amount to more than $10 a share.

The Government stresses the importance of the application of a quantitative test. Note the following statement made in argument: "The Government admits that if 5 per cent of the business of a department store is of hardware, or if 5 per cent of the business of a grocery store is devoted to the sale of fruit, that might be considered substantial in view of the varied nature of such business. But with respect to a bank, whose business activities are rigidly limited by its charter and by statute to a substantial part of its business in receipt of deposits, 'substantial' must mean, we think, at least forty to fifty per cent of its business in that activity." But, obviously, this is a purely arbitrary standard. The Government attempts to support it on the ground that the plaintiff company is trustee of approximately four thousand estates, having a gross value in excess of $300,000,000, and that, since its earnings from commissions on these estates for the year 1935 were in excess of $890,000, the receipt of deposits is a trivial or insignificant part of the plaintiff's business, in comparison with its trust business. Admittedly the trust business of the plaintiff company constitutes its major activities and contributes more to its earnings than any of the others. But, if deposits received direct from trust estates be omitted from consideration, there still remained at the close of the year 1935 approximately $8,000,000 of deposits from other sources. In any event, whatever the proportion may be, it is not conclusive if, as a matter of fact, the deposits are substantial, and we believe that the figures taken from the books of the company irrefutably require an affirmative answer.

Pressing its argument further, the Government maintains that the word "deposits" as used in the Act has a restricted meaning,—that it is confined to the ordinary type of deposits,—subject to withdrawal at will. However, all deposits made with the plaintiff company represent money intrusted to it, which it is obligated to repay on demand, or after a prescribed period, depending upon the particular agreement had with each depositor. All such items are, and must be regarded as deposits by the bank, and are and must be carried as such on its balance sheet. Savings-bank deposits are not subject to withdrawal at will, yet they are none the less deposits in a banking sense. But even applying the test urged by the Government, approximately $800,000 of deposits on hand at the close of the year 1935, not directly arising from trust estates, were subject to withdrawal at will. Nor is the test to be found in the number of separate depositors. They are admittedly relatively few,—approximately one hundred when trust accounts are excluded. But suppose the case of a newly incorporated bank, doing essentially an industrial banking business, having as yet very few depositors, but one or two that made deposits in very large amounts. Could it be said that the bank's deposits were not a substantial part of its business?

■ The deposit by the plaintiff company of trust funds with itself is in entire accordance with the Maryland law. See Real Estate Trust Company v. Union Trust Company, 102 Md. 41, 61 A. 228. Funds so deposited were not segregated. Plaintiff had the right to use them for its own purposes, for loans and investments, subject, of course, to the obligation of repayment on demand.

The Government lays much stress upon the fact that the plaintiff company has advertised that it has never engaged in the activities of general banking, selling of securities, their underwriting, etc.; and also upon the fact that it is not a member of the Baltimore Clearing House. But these facts have no conclusive effect in the present case. They indicate nothing more than that the plaintiff company devotes its energies, as a trust company and not as a bank, to the management of estates and property. The question here is a narrow one. The inquiry is not whether deposits represent the most substantial part,—that is, the major part, of the plaintiff company's business, but simply whether they represent a substantial part. As already emphasized, a part of any business that is twice the amount of the capital and surplus employed in that business must be defined as a substantial part of it, unless we are to depart

from the generally accepted definition of the word "substantial", and give to it some fictitious, or highly refined meaning. This we are unwilling to do. The word "substantial" is defined in Webster's New International Dictionary as "considerable in amount, value, or the like; large; as a substantial gain." Clearly, the extent of plaintiff's deposits meets this definition.

Coming, finally, to a consideration of the specific figures involved in the plaintiff company's claim for refund, the plaintiff's contention is that loss of $25,912.65 (deductible under Section 117(d) only to the extent of capital gains plus $2,000) should be applied against gains from sales of Government or corporate bonds amounting to $43,390.52, thus reducing the amount of such gains to $17,477.87. The plaintiff further contends that since it is a trust company a substantial part of whose business has been shown to be the receipt of deposits, it can deduct in full its losses from sales of bonds amounting to $286,691.37. Thus the amount of the disputed deduction claimed by plaintiff is $267,213.50, or $286,-691.37 less $19,477.87, the latter figure being the only deduction admitted by the Government. The difference in tax under the plaintiff's contention is, therefore, $36,-741.86, which, with interest in the amount of $6,068.44, amounts to a total claim of $42,810.30.

 The Government makes the further contention that even assuming that, as plaintiff contends, the loss of $286,691.37 from sales of bonds is deductible in full, such should first be reduced by the gains from the sale of bonds, $42,393.52. If this theory be adopted, it would, of course, involve a different calculation. We believe that the language employed in the latter part of Section 117(d), while rather poorly phrased, does support the Government's view, namely, that the plaintiff's capital losses on the sale of bonds can, in any event, only be allowed to the extent such losses exceed the gains from the sale of bonds, the other losses to be treated separately, and allowed only to the extent stipulated in the first part of the statute. Neither side has, however, submitted a computation of the tax on this basis, using the stipulated, revised figures. Upon counsel for plaintiff doing so, a judgment will be entered for plaintiff for the amount of tax, plus interest, so computed, which is hereby found to be due plaintiff as a refund.

It is true that, since the power of the Government to tax income extends to gross income, whether and to what extent deductions may be allowed depends upon the will of Congress. So, only as there is clear provision therefor can any particular deduction be allowed, which means that in doubtful cases there is no rule of law resolving that doubt in favor of the taxpayer. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172. However, we entertain no doubt in the present case as to the interpretation to be given the statute on the basic points here in dispute. The arguments of Government counsel, to exclude the present plaintiff from the benefits of the statute, are too tenuous and would produce discrimination not intended, or reasonably to be inferred from the language employed.